2007 WY 88

**Sotero Lepe NEGRETTE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 06–39.

Supreme Court of Wyoming.

May 23, 2007.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel; Kate McKay, Student Intern. Argument by Ms. McKay.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Director PAP; Geoffrey L. Gunnerson, Student Director PAP; Jennifer Reece, Student Intern, PAP. Argument by Ms. Reece.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Sotero Lepe Negrete [1] pled guilty to one count of possession of a controlled substance conditioned upon his right to appeal the denial of his motion to suppress evidence. He claims the district court erred by denying his motion because his detention by law enforcement was unreasonable under all the circumstances in violation of Article 1, § 4 of the Wyoming Constitution. He also claims the detention violated the Fourth Amendment to the United States Constitution because the circumstances did not give rise to a reasonable suspicion by law enforcement that he was involved in criminal activity. We hold the district court did not err in denying the suppression motion and affirm.

---

1. The notice of appeal is captioned *Negrette v. State*, an incorrect spelling of Mr. Negrete's surname. We use the correct spelling, Negrete, in this opinion.

## ISSUE

[¶ 2]   The sole issue for this Court's determination is whether the district court erred in denying Mr. Negrete's motion to suppress because his detention was unconstitutional under both the federal and state constitutions.

## FACTS

[¶ 3]   On April 14, 2005, at approximately 2:45 p.m., Deputy Jeff Hodge of the Crook County Sheriff's Office was patrolling[2] westbound on Interstate 90 near Moorcroft, Wyoming with his certified drug detection dog in the back seat when he observed a pickup truck with tinted windows traveling in the opposite direction at approximately fifty-five miles per hour in a seventy-five mile per hour zone.  The vehicle's speed aroused Deputy Hodge's concerns and he turned his patrol car around and followed the pickup.  He called dispatch, provided the dispatcher with the pickup's Illinois license plate number and asked for a license check.  The dispatcher advised him the license plate "was not on file."[3]  Deputy Hodge activated his emergency lights and the driver of the pickup responded by pulling over to the side of the highway.

[¶ 4]   Deputy Hodge approached the driver's side of the pickup.  Inside were the driver, later identified as Maria Guadalupe Lombera–Perez, and a passenger, Mr. Negrete.  Deputy Hodge advised them that he had stopped them because the license plate number was not on file.  Mr. Negrete handed the deputy a vehicle registration and proof of insurance card.  Deputy Hodge asked Mr. Negrete if he owned the vehicle and he responded that it belonged to a friend but was insured under his name.  Deputy Hodge informed the occupants that he was going to have dispatch run a check on the vehicle identification number (VIN) to verify that it was properly registered and licensed. He asked the driver to accompany him to the patrol car while he contacted dispatch.  The

driver and Mr. Negrete spoke to each other in Spanish and Mr. Negrete advised the deputy that the driver did not speak English. Because Ms. Lombera–Perez did not speak English and Mr. Negrete seemed more closely connected with the vehicle, Deputy Hodge asked Mr. Negrete to accompany him to the patrol car while he checked the registration and license plates.  Deputy Hodge obtained Ms. Lombera–Perez's driver's license and he and Mr. Negrete went to his patrol car.

[¶ 5]   Mr. Negrete sat in the front passenger seat of the patrol car while Deputy Hodge contacted dispatch.  As he waited for dispatch to respond, Deputy Hodge asked Mr. Negrete where he and Ms. Lombera–Perez were traveling from.  Mr. Negrete stated they were headed back to Illinois from Oregon where they had visited her family for one or two days.  Deputy Hodge noticed the registration appeared to have been altered and the insurance card was for temporary liability insurance effective from April 10 through May 10, 2005.  The card showed the named insured as Gilberto Maldonado and Mr. Negrete as an insured driver.  Ms. Lombera–Perez was not listed on the card.

[¶ 6]   The dispatcher advised that the VIN was a duplicate, meaning more than one vehicle had the same number.  Deputy Hodge went back to the pickup, obtained the VIN from the vehicle, and determined that it matched the VIN on the registration.

[¶ 7]   Back in the patrol car, Deputy Hodge asked Mr. Negrete the name of the pickup's owner.  Mr. Negrete said that Gilbert Mendoza owned the pickup and he had let him borrow it.  Deputy Hodge concluded "that there was some type of criminal activity afoot" and decided to run a criminal history check on Mr. Negrete.  While he waited for the results, Deputy Hodge asked Mr. Negrete the names of Ms. Lombera–Perez's brother and sister whom they had just visited in Oregon.  Mr. Negrete said that he did not know their names;  they went by nick-

---

**2.**  Deputy Hodge testified that he was doing "normal patrol work", meaning "traffic citations, criminal activity, criminal interdiction.  Beings I have a canine unit, I do criminal interdiction."

**3.**  Deputy Hodge testified the information that the license plate was not on file meant that the license plate number did not match the pickup, indicating either a forged license plate or a stolen vehicle.

names. Deputy Hodge asked what their nicknames were. Mr. Negrete stated he did not know, laughed nervously and tried to explain. Deputy Hodge "became increasingly more suspicious" because Mr. Negrete did not know the names of the people he had just visited in Oregon. Deputy Hodge also thought that driving from Illinois to Oregon seemed like a long way to go for a one or two day visit.

[¶ 8] By this time, Deputy Hodge had verified the pickup was not stolen but had not verified the license plates on the pickup belonged on it. Based on the totality of the circumstances, he decided to have his dog sniff the pickup. He advised Mr. Negrete of his intent and Mr. Negrete responded, "[A]ll right. No problem." The dog alerted to the rear of the vehicle. A subsequent search revealed thirty-nine packages containing 21.83 pounds of marijuana in a compartment concealed by a false panel underneath the pickup bed.

[¶ 9] Mr. Negrete was charged with one count of possession of marijuana with intent to deliver in violation of Wyo. Stat. Ann. § 35–7–1031(a) (LexisNexis 2005). Prior to trial, he filed a motion to suppress the evidence seized in the vehicle search, claiming that Deputy Hodge lacked a reasonable basis to detain him and the detention violated the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution. After a hearing, the district court denied the motion, holding that the deputy had a reasonable suspicion of illegal activity that justified expanding the scope of the traffic stop; use of the drug dog was not a search; and once the dog alerted the deputy had probable cause to search.

[¶ 10] As a consequence of the district court's ruling, Mr. Negrete and the State entered into a plea agreement in which the State agreed to amend the information to charge Mr. Negrete with possession of marijuana in violation of 35–7–1031(c), rather than possession with intent to deliver as originally charged.[4] In exchange, Mr. Negrete agreed to plead guilty to the amended charge conditioned on his right to appeal the denial of his suppression motion. The district court accepted the plea agreement and Mr. Negrete's plea of guilty to possession. The district court sentenced him to imprisonment for twenty-four to sixty months with credit for the time he served between his arrest and his sentencing.

## STANDARD OF REVIEW

[¶ 11] The following standards govern our review of alleged error in the denial of a motion to suppress:

Rulings on the admissibility of evidence are within the sound discretion of the trial court. We will not disturb such rulings absent a clear abuse of discretion. An abuse of discretion occurs when it is shown the trial court reasonably could not have concluded as it did. Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous. Because the trial court has the opportunity to hear the evidence, assess witness credibility, and draw the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the trial court's determination. Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed de novo.

*Dettloff v. State*, 2007 WY 29, ¶ 11, 152 P.3d 376, 381 (Wyo.2007) (citations omitted).

## DISCUSSION

[¶ 12] Mr. Negrete claims on appeal that once he determined the pickup truck was not stolen, Deputy Hodge had no authority under the federal or state constitution to detain him and expand the stop into a drug investigation.[5] The State responds that the detention

---

4. Possession of marijuana with intent to deliver is a felony punishable by imprisonment for not more than ten years. Section 35–7–1031(a)(ii). Possession of marijuana in the quantity with which Mr. Negrete was charged is also a felony but is punishable by imprisonment for not more than five years. Section § 35–7–1031(c)(iii).

5. Mr. Negrete asserts that the detention and questioning were unreasonable and violated the state and federal constitutions. He does not contend the canine sniff in and of itself was unconstitutional. The only argument he makes with respect to the canine sniff is that the evidence discovered as a result was fruit of the poisonous

was permissible under both constitutions because Deputy Hodge had a reasonable suspicion of criminal activity based on the circumstances, including that the vehicle license plate number was not on file, the vehicle registration appeared to have been altered, and the VIN was a duplicate.

### State Constitutional Analysis

[¶ 13]   Article 1, § 4 of the Wyoming Constitution requires searches and seizures to be reasonable under all of the circumstances. *O'Boyle v. State*, 2005 WY 83, ¶ 26, 117 P.3d 401, 409–10 (Wyo.2005). Whether a search or seizure is reasonable is a question of law to be decided from all the circumstances. *Id.*, ¶ 25, 117 P.3d at 409. Thus, the determinative question in Mr. Negrete's case is the reasonableness of the detention under all the circumstances.

[¶ 14]   The district court concluded the detention was reasonable because the circumstances raised questions about the vehicle registration and the license plates. From our review of the record, we conclude the evidence supports the district court's conclusion. We look to the totality of the circumstances to determine whether law enforcement had reasonable suspicion to justify the detention.

[¶ 15]   The totality of the circumstances showed: the license plate on the pickup was not on file; the registration had been altered; the license plate number did not match the registration; the occupants of the pickup had traveled from Illinois to Oregon for a two day visit; Mr. Negrete did not know the names of the people he had just visited in Oregon; Mr. Negrete said he had borrowed the pickup from a friend named Gilbert Mendoza but the proof of insurance card showed the owner as Gilberto Maldonado; the VIN was a duplicate; Mr. Negrete seemed to change the subject whenever Deputy Hodge brought up a subject that made him uncomfortable; Mr. Negrete appeared nervous when he could not remember the names of the people he had just visited; and Deputy

Hodge was unable to verify that the license plates belonged on the pickup.

[¶ 16]   As these events unfolded, Deputy Hodge became increasingly suspicious that Mr. Negrete was involved in illegal activity. Although any of these circumstances alone may not have justified the detention, the totality of the circumstances were sufficient to support the conclusion that Deputy Hodge had reasonable suspicion to believe Mr. Negrete had committed or might be committing a crime and to detain him. The detention was reasonable under all of the circumstances and did not violate the Wyoming Constitution.

[¶ 17]   In reaching this result, we note that the facts presented in Mr. Negrete's case are significantly different from those presented in *O'Boyle*, the case Mr. Negrete primarily relies upon to support his argument that his detention was unreasonable. In *O'Boyle*, a driver was stopped for going four miles per hour over the speed limit and then was questioned extensively about subjects having nothing to do with the reason for the stop or his travel plans, including what courses his son was taking in college, whether he lived on campus and the name of the college mascot. The obtrusive questioning in *O'Boyle* occurred despite the trooper's admission that he did not have a reasonable suspicion of other criminal activity beyond the speeding violation.

[¶ 18]   *O'Boyle* is immediately distinguishable from Mr. Negrete's case both by the extensiveness of the questioning and the absence of a reasonable suspicion of other criminal activity. In contrast to what occurred in *O'Boyle*, the questions Deputy Hodge asked were limited both in number and subject matter. As compared to the sixty-some questions asked in *O'Boyle*, Deputy Hodge may have asked twelve, and those questions were limited in scope to queries about who owned the pickup truck, where Mr. Negrete and Ms. Lombera–Perez were traveling to and from, how long they had been in Oregon, and who they had visited there. The nature and scope of Deputy Hodge's questioning

---

tree because it followed an unconstitutional detention.   Because Mr. Negrete does not directly

challenge the canine sniff, we do not address it.

was also directly attributable to his growing suspicion of other criminal activity, based in part on the altered registration, the discrepancy between the name of the vehicle owner on the proof of insurance card and the name Mr. Negrete gave, the questions surrounding the license plate number and the VIN, and Mr. Negrete's inability to name the people he had just visited. *O'Boyle* was factually so different that it simply does not support Mr. Negrete's argument.

### Federal Constitutional Analysis

[¶ 19] We have described our Fourth Amendment analysis as follows:

In determining whether a traffic stop detention was reasonable under the Fourth Amendment, we apply the two-part inquiry established in *Terry v. Ohio,* 392 U.S. at 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889, that is: 1) was the initial stop justified, and 2) were the officer's actions during the detention "reasonably related in scope to the circumstances that justified the interference in the first instance[?]" In making this inquiry, the U.S. Supreme Court has rejected bright-line rules and focused instead on a fact-specific reasonableness inquiry. Under the Fourth Amendment, the government has the burden of demonstrating that a seizure was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

*O'Boyle,* ¶ 46, 117 P.3d at 414 (citations omitted).

[¶ 20] Mr. Negrete does not challenge the appropriateness of the initial stop. Therefore, our inquiry focuses on the second prong of the *Terry* inquiry: whether the deputy's actions during the detention were reasonably related in scope to the circumstances justifying the interference in the first place. We have summarized the standards applicable under this second prong as follows:

An officer's actions during a traffic stop must be reasonably related to the purpose of the stop. Absent valid consent, a reasonable suspicion of other unlawful activity or reasonable suspicion that a detainee is armed, an officer may not expand an investigative detention beyond the scope of the stop, ask questions unrelated to the stop or "embark on a fishing expedition in the hope that something will turn up." The relevant question is whether the scope of the stop was reasonable under the totality of the circumstances, and the burden of proving reasonableness lies with the government.

*O'Boyle,* ¶ 49, 117 P.3d at 415 (citations omitted).

[¶ 21] Upon being stopped by Deputy Hodge because the pickup license plate was not on file, Mr. Negrete was seized within the meaning of the Fourth Amendment. We must decide under the totality of the circumstances whether Deputy Hodge's actions during the detention were reasonably related in scope to the stop. In making this determination, we are guided by the following principles: 1) a detention must be carefully tailored to the reason for the stop; 2) an officer may request the detainee's driver's license, proof of insurance, and vehicle registration or rental papers, run a computer check and issue a citation or warning; 3) an officer may make reasonable inquiry into travel plans to the extent necessary to put the traffic violation in context; 4) absent reasonable suspicion of other illegal activity or that a detainee is armed, the officer may not ask questions unrelated to the stop; and 5) an officer may expand the scope of the detention only with valid consent or a reasonable suspicion of other illegal activity or that the detainee is armed. *Id.,* ¶ 48, 117 P.3d at 416.

[¶ 22] Applying these standards to the facts presented, we conclude the scope of the detention initially was appropriately tailored to the reason for the stop. By the time Deputy Hodge asked Mr. Negrete where they were traveling from, he knew the license plate number on the pickup was not on file. Given this information, his single question to Mr. Negrete about where they were traveling from was not unreasonable. Although the question did not directly concern the reason for the stop, we do not find it unreasonable given its limited nature and duration and in light of the report that the license plate was not on file.

[¶ 23]   As he waited for information from dispatch concerning the pickup occupants' driver's licenses, Deputy Hodge asked Mr. Negrete why they had been in Oregon and for how long.   Again, from the limited nature and duration of the question as they sat in the patrol car waiting to hear from dispatch, we do not find it unreasonable.   Deputy Hodge then noticed that the registration appeared to have been altered by someone whiting out and writing over the original information.   Also, dispatch advised that the VIN was a duplicate.   Deputy Hodge asked Mr. Negrete the name of his friend who owned the truck and Mr. Negrete responded, "Gilbert Mendoza," which did not match the name of Gilberto Maldonado on the proof of insurance card.   This question was reasonable under the circumstances and all of the circumstances together gave rise to increasing suspicion that criminal activity was afoot. Mr. Negrete's nervousness and inability to relay the names of the people he just visited, combined with all of the other circumstances, gave rise to a reasonable suspicion of other illegal activity which justified Deputy Hodge's decision to expand the scope of the stop.   For these reasons, we hold the detention did not violate the Fourth Amendment to the United States Constitution.

[¶ 24]   We affirm the district court's order denying the motion to suppress.