2008 WY 6

**William L. BARNES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

Nos. 06–285, 06–286.

Supreme Court of Wyoming.

Jan. 23, 2008.

Representing Appellant: Diane M. Lozano, State Public Defender, PDP; Tina N. Kerin, Appellate Counsel; Kirk A. Morgan, Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; David Willms, Assistant Attorney General; Kristen Dolan, Assistant Attorney General. Argument by Ms. Dolan.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]    William L. Barnes pled no contest to possession of cocaine with intent to deliver, but reserved his right to appeal the district court's denial of his motion to suppress statements he made to police before his arrest. He claims the statements were inadmissible because he made them while in custody but without having been given *Miranda* warnings. We affirm the district court's order denying the suppression motion.

[¶ 2]    In a consolidated appeal, Mr. Barnes claims the district court erred in concluding he was not entitled to credit for time served while he was awaiting disposition of the possession charge and another unrelated charge. The district court declined to give him credit for time served because he had violated the conditions of his parole in yet another matter and was incarcerated partly because he was awaiting a parole revocation hearing. We hold Mr. Barnes was entitled to credit for the time he served between his arrest and sentencing. We reverse the district court's sentence and remand for correction of the judgment and sentence in accordance with this opinion.

### ISSUES

[¶ 3]    Mr. Barnes states the issues as follows:

I.    Did the trial court err in denying appellant's motion to suppress the statements given to police regarding his use and possession of an illegal drug when the statements were solicited by a police detective while appellant was in custody and prior to him receiving a *Miranda* style warning?

II.    Did the trial court err when it directed that appellant not be given any credit for the time served as he was on parole, and then forwarded its decision to the Parole Board?

The State claims the district court properly denied Mr. Barnes' motion to suppress and declined to give him credit for time served while awaiting a parole revocation hearing.

## FACTS

[¶ 4] On January 11, 2006, Detective James Eddy of the Cheyenne Police Department saw a vehicle without registration traveling westbound on Nationway in Cheyenne, Wyoming. Detective Eddy approached the vehicle in his unmarked patrol car. He observed Mr. Barnes, who was driving the vehicle, and a passenger. They looked at Detective Eddy several times and then the passenger slumped down in the seat. The detective activated his lights and siren and, after he had sounded the siren twice, the vehicle pulled over. As Detective Eddy stopped the patrol car to inquire about the vehicle registration, Mr. Barnes got out of the vehicle and ran. Detective Eddy yelled for him to stop but Mr. Barnes did not respond. Detective Eddy returned to his vehicle and pursued Mr. Barnes into an alley. He left the patrol car and went after Mr. Barnes on foot, apprehending him a few blocks away.

[¶ 5] Detective Eddy tackled Mr. Barnes to the ground and told him to put his hands behind his back. Instead, Mr. Barnes put his hands in his pants pockets. He appeared to be trying to remove something. Detective Eddy managed to get Mr. Barnes' hands out of his pockets and placed him in handcuffs. He sat Mr. Barnes up and, as he did so, he noticed several baggies containing white powder on the ground. He asked Mr. Barnes if the powder was methamphetamine. Mr. Barnes stated the baggies were not his property. The detective searched Mr. Barnes and in his pocket found a spoon and a needle of the type commonly used for shooting methamphetamine.

[¶ 6] Mr. Barnes began complaining of shortness of breath and dizziness. Detective Eddy asked him how much of the powder he had ingested. Mr. Barnes responded that methamphetamine was his drug of choice and the powder in the baggies was cocaine. Detective Eddy asked him why he had the substance if he had not been using it. Mr. Barnes stated, "Why do you think? If I'm not using it, what do you think I'm doing with it?" The officer asked him what he meant and Mr. Barnes responded that he intended to sell the cocaine. Detective Eddy

placed him under arrest and took him to the detention center.

[¶ 7] At the detention center, Mr. Barnes complained of chest pains. Detective Eddy transported him to the hospital where he was treated and released. Back at the detention center, Mr. Barnes was charged with possession with intent to deliver cocaine. Detective Eddy subsequently weighed and tested the substance in the baggie, which proved to be cocaine, and Mr. Barnes was also charged with misdemeanor possession of cocaine.

[¶ 8] Prior to trial, Mr. Barnes filed a motion to suppress the statements he made to Detective Eddy prior to his arrest. He claimed that he was in custody (i.e. Detective Eddy chased him down, tackled him to the ground and placed him in handcuffs) when he made the statements; therefore, Detective Eddy was required to give him *Miranda* warnings prior to questioning him. The State argued Mr. Barnes' statements were not made during a custodial interrogation which is a condition precedent to the *Miranda* warning requirement. Under the circumstances that existed at the time, the State asserted, the seizure was best characterized as a *Terry* stop, in which an officer may question a detainee sufficiently to determine his identity and information confirming or dispelling the officer's suspicions without first giving *Miranda* warnings.

[¶ 9] After a hearing, the district court denied the motion. The court agreed with the State that Detective Eddy's questions were more analogous to a *Terry* stop than a custodial interrogation and did not, therefore, violate the Fifth Amendment to the United States Constitution. Additionally, the court concluded the detective's questions were in response to Mr. Barnes' medical complaints and were necessary for his health and safety.

[¶ 10] Prior to the court's ruling on the motion to suppress, the State moved for and the district court granted a dismissal of count II, misdemeanor possession of cocaine. Mr. Barnes pleaded no contest to the remaining charge of possession with intent to deliver and the district court sentenced him to four to five years imprisonment. The district court refused to give Mr. Barnes credit for

time served, reasoning that at the time of his arrest for possession with intent to deliver, he was on parole and his subsequent incarceration was due in part to the parole violation. The district court ordered the sentence to be served concurrently with the sentences imposed for the parole violation and another crime with which Mr. Barnes was charged after his arrest for possession with intent to deliver. Subsequently, Mr. Barnes filed a motion to correct illegal sentence in which he argued that he was entitled to credit for 285 days served from his arrest on January 11, 2006, through his sentencing on October 23, 2006, because his detention during that time was a result solely of his inability to post bond. It is not apparent from the record whether the district court ruled on the motion.

## STANDARD OF REVIEW

[¶ 11] The standards for reviewing a district court order denying a motion to suppress have been often repeated:

> Rulings on the admissibility of evidence are within the sound discretion of the trial court. We will not disturb such rulings absent a clear abuse of discretion. An abuse of discretion occurs when it is shown the trial court reasonably could not have concluded as it did. Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous. Because the trial court has the opportunity to hear the evidence, assess witness credibility, and draw the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the trial court's determination.

*Negrette v. State*, 2007 WY 88, ¶ 11, 158 P.3d 679, 682 (Wyo.2007). A sentence that does not include proper credit for pre-sentence incarceration is illegal. *Doolittle v. State*, 2007 WY 52, ¶ 18, 154 P.3d 350, 356 (Wyo. 2007). The determination of whether a sentence is illegal is a question of law, which we review *de novo*. *Id.*, ¶ 9, 154 P.3d at 354.

## DISCUSSION

1. *Order Denying Motion to Suppress Statements*

[¶ 12] Mr. Barnes contends that the district court abused its discretion in denying his motion to suppress the statements he made to Detective Eddy because he made them during custodial interrogation without having been advised of his *Miranda* rights. He further asserts that the circumstances existing at the time he made the statements did not fall under any of the exceptions, including the public safety exception, which would relieve Detective Eddy of his obligation to give the *Miranda* warnings. The State argues that the district court properly denied the suppression motion because, first, Mr. Barnes made the statements during a valid investigatory stop, not a custodial interrogation, and second, Detective Eddy's questions were prompted by Mr. Barnes' medical complaints and fell within the public safety exception to the *Miranda* requirement. We begin by considering whether Mr. Barnes made the statements during an investigatory stop or in the course of a custodial interrogation.

a. *Investigatory Stop v. Custodial Interrogation*

[¶ 13] In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court established the rule that to be admissible in evidence any statement given by a suspect during custodial interrogation must be preceded by four warnings: a suspect has the right to remain silent; anything he says can be used against him in a court of law; he has the right to the presence of an attorney; and, if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. *Grissom v. State*, 2005 WY 132, ¶ 19, 121 P.3d 127, 135 (Wyo.2005), citing *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), *cert. denied*, 535 U.S. 1106, 122 S.Ct. 2315, 152 L.Ed.2d 1069 (2002). Statements made by a suspect during custodial interrogation after these advisements are given are admissible. *Id.* Statements made in response to police questioning after a suspect is in custody are generally inadmissible if these advisements have not been given. *Id.*

[¶ 14] Custodial interrogation means questioning initiated by law enforce-

ment officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Jelle v. State,* 2005 WY 111, ¶ 14, 119 P.3d 403, 408 (Wyo.2005). In resolving the custodial status of a suspect we consider "whether a reasonable man in [the suspect's] position would have considered himself to be in police custody." *Gompf v. State,* 2005 WY 112, ¶ 31, 120 P.3d 980, 988 (Wyo.2005). General on-the-scene questioning as to facts surrounding a crime is not "custodial interrogation," nor are statements volunteered freely without compelling influences. *Id.* We consider the totality of the circumstances when determining whether a suspect was in custody when questioned. *Id.* Several factors are relevant to the determination:

> Among these are: (1) whether a suspect is questioned in familiar or neutral surroundings; (2) the number of police officers present; (3) the degree of physical restraint and whether it is comparable to those associated with a formal arrest; and (4) the duration and character of the interrogation. *See* 2 Wayne R. LaFave, Jerold H. Israel and Nancy J. King, *Criminal Procedure* § 6.6(c) at 527 (2nd ed.1999); *see also Wunder* [v. *State*], 705 P.2d [333] at 335 [(Wyo.1985)]. The nature of the interrogator, the nature of the suspect, the time and place of the interrogation, the progress of the investigation at the time of the interrogation, whether the suspect is informed that his detention would not be temporary, and the elapsed amount of time between questioning and the arrest may be important factors as well. *Wunder,* 705 P.2d at 335; J.F. Ghent, Annotation, *What Constitutes "Custodial Interrogation" Within Rule of Miranda v. Arizona Requiring that Suspect be Informed of His Federal Constitutional Rights Before Custodial Interrogation,* 31 A.L.R.3d 565 (1970). No one factor alone will necessarily establish custody for *Miranda* purposes, and not all factors will be relevant to a given case.

*Jelle,* ¶ 14, 119 P.3d at 408. Citing these factors, Mr. Barnes emphasizes the degree of physical restraint Detective Eddy used and argues it was comparable to a formal arrest.

[¶ 15] As stated in *Jelle,* no one factor necessarily establishes custody for *Miranda* purposes. Rather, the totality of the circumstances must be considered. In Mr. Barnes' case, the questioning occurred in a neutral setting, only one officer was present and it appears from the record that the questioning lasted only a few moments. These factors would suggest that Mr. Barnes was not in custody for *Miranda* purposes.

[¶ 16] The difficulty arises from the fact that Mr. Barnes had been forcibly taken to the ground and placed in handcuffs when he was asked about the substance in the bags. Custody requires only that an accused be deprived of his freedom of action in any significant way. *Bhutto v. State,* 2005 WY 78, ¶ 15, 114 P.3d 1252, 1260 (Wyo.2005). There is no question Mr. Barnes had been deprived of his freedom of action in a significant way. It seems likely that a reasonable person in Mr. Barnes' position would have considered himself to be in police custody. Contrary to the district court's conclusion, we conclude Mr. Barnes was in custody at the time Detective Eddy questioned him about the substance in the bags. That conclusion, however, does not end the inquiry.

### b. *The Public Safety Exception to Miranda*

[¶ 17] In denying Mr. Barnes' suppression motion, the district court also concluded that the detective's questions were justified by the public safety exception to *Miranda* recognized in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). In that case, the Court held admissible a statement made by a suspect in response to police questioning before *Miranda* warnings were given. Rather than focusing on the question of whether the suspect made the statements during custodial interrogation, the Court focused instead on whether public safety considerations justified officer questioning of a suspect without first giving *Miranda* warnings.

[¶ 18] In *Quarles,* a woman told police that she had been raped and the man who did it had just entered a supermarket with a gun. An officer observed a man matching the victim's description of the suspect inside

the supermarket, pursued him with his gun drawn and ordered him to stop and put his hands over his head. The officer frisked the suspect and found an empty shoulder holster. After handcuffing him, the officer asked the suspect where the gun was. He responded, "The gun is over there," and pointed to some empty cartons. The officer retrieved a revolver from one of the cartons.

[¶ 19] The defendant moved to suppress his statement, claiming the question violated his Fifth Amendment guarantee against compulsory self-incrimination and *Miranda*. On the facts before it, the Court held there was a public safety exception to the *Miranda* requirement. The Court stated:

> In a kaleidoscopic situation such as the one confronting these officers, where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the exception which we recognize today should not be made to depend on *post hoc* findings at a suppression hearing concerning the subjective motivation of the arresting officer. Undoubtedly most police officers, if placed in Officer Kraft's position, would act out of a host of different, instinctive, and largely unverifiable motives—their own safety, the safety of others, and perhaps as well the desire to obtain incriminating evidence from the suspect.
>
> Whatever the motivation of individual officers in such a situation, we do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety.

*Quarles,* 467 U.S. at 656, 104 S.Ct. 2626. The Court made it clear that the exception undoubtedly extends to officers' questions necessary to secure their own safety. *Id.* at 659, 104 S.Ct. 2626. This Court relied on *Quarles* in *Mackrill v. State,* 2004 WY 129, ¶ 14, 100 P.3d 361, 365–368 (Wyo.2004). Mr. Mackrill was in the company of Chad Schaub when Mr. Schaub was apprehended by law enforcement on an arrest warrant for possession of pipe bombs and drugs and for questioning in connection with an attempted murder. Mr. Schaub was considered armed and

dangerous. As Mr. Schaub and Mr. Mackrill were getting into Mr. Mackrill's truck, officers ordered them to the ground and handcuffed them. Mr. Mackrill was lying on the ground in handcuffs when one of the officers asked him whether he had any weapons. He responded that he had two knives. Another officer asked him if there were any weapons or contraband in his vehicle. Mr. Mackrill replied that he had a gun and a clip in his truck. When officers retrieved the gun from the truck, they found marijuana.

[¶ 20] Mr. Mackrill was charged with possession of marijuana with intent to deliver. He moved to suppress the statements he made before his arrest, arguing that he was handcuffed, was not free to leave the scene, and had not received the *Miranda* advisements at the time he made the statements in violation of his Fifth Amendment rights. This Court upheld the district court's order denying the motion on the ground that the officer's questions were reasonably related to officer and public safety and *Miranda* warnings were not required. *Mackrill,* like *Quarles,* relied exclusively on the officer and public safety exception and did not consider the investigatory stop/custodial interrogation distinction in holding that *Miranda* warnings were not required.

[¶ 21] In the present case, the district court held Mr. Barnes' statements admissible under the public safety exception to *Miranda.*

> The Detective saw a substance that appeared to be an illegal drug and [Mr. Barnes] began complaining of dizziness. Detective Eddy's questioning about the substance that came out of [Mr. Barnes'] pocket was done in response to a medical emergency. It was necessary for the officer to inquire as to what the substance was and how much [Mr. Barnes] ingested. Therefore, it was not necessary for Detective Eddy to *Mirandize* [Mr. Barnes] before inquiring about his use of the substance.

[¶ 22] We agree. Once Mr. Barnes began complaining of dizziness and shortness of breath, Detective Eddy's questions were necessary to protect Mr. Barnes from harm. Given Mr. Barnes' unusual and suspicious

behavior, the spoon and needles found in his pocket, and his complaints of dizziness and shortness of breath, Detective Eddy had every reason to believe Mr. Barnes was under the influence of and possibly suffering from a drug overdose. It was objectively reasonable under the circumstances for Detective Eddy to ask Mr. Barnes how much of the white powder he had taken. The district court correctly concluded Mr. Barnes' response to the question to the effect that he was a methamphetamine user, not a cocaine user, was admissible.

[¶ 23] Under the totality of the circumstances, Mr. Barnes' response also reasonably led the detective to inquire further. To borrow language from *Quarles,* 467 U.S. at 656, 104 S.Ct. 2626, "in a kaleidoscopic situation such as the one confronting" Detective Eddy, "where spontaneity rather than adherence to a police manual is necessarily the order of the day," it was reasonable for him to doubt the truth of Mr. Barnes' response and attempt to discern what he had ingested. The white powder, the spoon and needle, and the complaints of dizziness and shortness of breath required Detective Eddy to obtain what information he could about Mr. Barnes' drug usage. To have ignored the factors suggesting a possible medical emergency and proceed with an arrest and *Miranda* warnings could have jeopardized Mr. Barnes' health and safety. Under these particular circumstances, we are not willing to say in hindsight that Detective Eddy's action in questioning him before arresting him and without *Miranda* warnings was unreasonable.

## 2. *Denial of Credit for Time Served*

[¶ 24] At the time of his arrest on January 11, 2006, for possession with intent to deliver, Mr. Barnes was on parole from a sentence imposed on a prior conviction.[1] On February 17, 2006, while in jail, he was also charged with felony larceny, in violation of Wyo. Stat. Ann. § 6–3–402(a), (c)(i) (LexisNexis 2007). The latter charge was unrelated to either his January 11, 2006, arrest or the earlier conviction for which he was on

parole. As a consequence of his 2006 arrests, the Board of Parole for the State of Wyoming (parole board) apparently placed an administrative hold on Mr. Barnes while he was in jail awaiting disposition of the 2006 charges, meaning that he was not to be released from jail pending a parole revocation hearing. However, the record does not reflect the date the administrative hold was imposed.

[¶ 25] Mr. Barnes appeared in district court for sentencing on the two 2006 convictions on October 9, 2006. At that hearing, the district court imposed concurrent sentences of four to five years for the larceny and possession with intent to deliver convictions. The district court entered a judgment and sentence in the two cases on October 26, 2006. The judgments and sentences stated:

> IT IS FURTHER ORDERED that WILLIAM L. BARNES shall be given no credit against the minimum and maximum sentences for time served in the Laramie County Detention Facility awaiting disposition of this matter, as he was on parole under Laramie County District Court Docket 26–631 at the time of his arrest.

The district court also ordered that the terms of confinement imposed be served concurrent with any sentence imposed for the parole violation.

[¶ 26] On November 27, 2006, the parole board held a parole revocation hearing. On December 1, 2006, the parole board entered an order revoking Mr. Barnes' parole. The parole board ordered that Mr. Barnes "not be credited with 1 year, 6 months and 2 days of the time during which he was released until he was taken into custody on October 23, 2006."

[¶ 27] Mr. Barnes claims the failure to give him credit for the time he served after his arrest on January 11, 2006, until his sentence was imposed on October 23, 2006, was illegal. He presents three alternative arguments to support his claim. At the very least, he contends, the district court was required to give him credit for the time he served between his arrest and the date the

---

1. Mr. Barnes was charged with felony burglary in 2000. He was sentenced to incarceration for a term of 2½ to 10 years. In January of 2005, he was released on parole.

parole board imposed the administrative hold because that period of confinement was due solely to his inability to post bond. Given that the record does not reflect when the hold was imposed and this Court cannot consider matters upon which the record is silent, he asserts, credit is required alternatively for all of the time served between his January arrest and October sentencing. Mr. Barnes further argues that even if this Court were somehow to determine when the administrative hold was imposed, he is entitled to credit for post-sentence confinement against the original charge for which he received parole.

[¶ 28] The State responds that credit for time served is appropriate only when the confinement is due solely to the defendant's inability to post bond. *Gomez v. State*, 2004 WY 15, ¶ 13, 85 P.3d 417, 420 (Wyo.2004). The State argues that Mr. Barnes was not entitled to credit for time served because his confinement was not due solely to his inability to post bond but rather to the administrative hold imposed as a result of his parole violations. The State points out that the district court indicated at the sentencing hearing that it would give credit for the time Mr. Barnes served between his January 2006 arrest and imposition of the administrative hold. The State then asks this Court to assume from the fact that no credit for time served was given that the district court determined the administrative hold was imposed immediately upon Mr. Barnes' January 2006 arrest. Alternatively, the State asks this Court to remand the case for purposes of determining when the administrative hold was imposed and, if necessary, correcting the sentence to reflect any credit due.

[¶ 29] It is well established that a defendant is entitled to credit for time spent in pre-sentence confinement against both the minimum and maximum sentence if he was unable to post bond for the offense of which he was convicted. *Doolittle*, ¶ 18, 154 P.3d at 356. A defendant is not, however, entitled to such credit when his confinement would have continued despite his ability to post bond. *Gomez*, ¶ 13, 85 P.3d at 420. A sentence that does not include proper credit for pre-sentence incarceration is illegal. *Doolittle*, ¶ 18, 154 P.3d at 356. An illegal sentence is one which exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates the constitution or the law. *Manes v. State*, 2007 WY 6, ¶ 7, 150 P.3d 179, 181 (Wyo.2007).

[¶ 30] The difficulty with what happened in Mr. Barnes' case is that neither the district court nor the parole board gave him credit for the time he served between his January 2006 arrest and October 2006 sentencing. The result is that he was confined for 285 days more than was authorized by any of the statutes under which he was sentenced. At one proceeding or the other— either the district court sentencing hearing or the parole board revocation proceeding— credit had to be given for the time Mr. Barnes spent in jail between his arrest and his sentencing. Had the parole board given him credit for that period of confinement in its revocation order, we would uphold the district court's sentence. *See Segnitz v. State*, 7 P.3d 49, 52 (Wyo.2000). The parole board's failure to do so resulted in an unlawful sentence because he was not awarded credit for time served. To cure the error, we reverse the sentence and remand to the district court with instructions to give Mr. Barnes credit for the time he served between his arrest and his sentencing.

[¶ 31] The district court's order denying the suppression motion is affirmed. However, the case is remanded for correction of the judgment and sentence consistent with this opinion.