2009 WY 13

**Darin C. BAREKMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–08–0119.

Supreme Court of Wyoming.

Feb. 5, 2009.

Representing Appellant: Diane M. Lozano, State Public Defender, PDP; Tina N. Kerin, Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Senior Assistant Attorney General. Argument by Mr. Rehurek.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] Darin C. Barekman pleaded guilty to one count of possession with intent to deliver a controlled substance, marijuana, while reserving his right to appeal the denial of his motion to suppress evidence seized from his trash. In his motion, and on appeal, he claimed the search of his trash without a warrant violated his right to be free from unreasonable searches, as protected by the United States and Wyoming constitutions. We hold the search did not violate Mr. Barekman's constitutional rights and affirm the denial of his suppression motion.

## ISSUE

[¶2] The issue for our determination is whether the search of Mr. Barekman's trash violated his right to be free from unreasonable searches guaranteed by the Fourth Amendment to the United States Constitu-

tion or Art. 1, § 4 of the Wyoming Constitution.

## FACTS

[¶ 3] On May 24, 2007, Eric Ford, a Carbon County Sheriff's Deputy assigned to the Wyoming Division of Criminal Investigation as a Special Agent, met with an individual who was in custody in Rawlins awaiting trial on drug charges. The individual informed Special Agent Ford that on approximately 7 to 10 occasions from June of 2006 to February of 2007, he had purchased marijuana in one ounce to one-quarter pound quantities from Mr. Barekman at his residence in Rawlins. The informant stated that Mr. Barekman had possessed up to 10 pounds of marijuana at a time and sold it to numerous people, sometimes making sales every 15 minutes. He said that Mr. Barekman worked for Shepard Construction during the day and sold marijuana in the evenings. According to the informant, Mr. Barekman drove his Shepard Construction work truck to Colorado about twice per month, usually on Friday, to pick up the marijuana and bring it back to his residence. He informed Special Agent Ford that Mr. Barekman kept the marijuana in a clear Tupperware container behind a couch in his living room and had a blue glass pipe that he used to smoke the marijuana.

[¶ 4] The same day, after the interview with the informant, Special Agents Ford and Nicholas Bisceglia went to Mr. Barekman's address, located some trash cans in front of the residence and removed a trash bag. Inside, they found mail addressed to Mr. Barekman, a paper plate with what appeared to be marijuana cigarette butts on it, and packing material with what appeared to be marijuana residue and pieces inside. Special Agent Ford recognized the packing material as consistent with the type used for concealing and transporting marijuana. The agents performed field tests on the materials, the results of which were presumptively positive for marijuana.

[¶ 5] Later, the agents conducted surveillance at Mr. Barekman's residence. They observed a pickup truck matching the description provided by the informant pull into the driveway. They also observed an individual whom they identified by photo verification as Mr. Barekman get out of the pickup truck and enter the residence.

[¶ 6] On the basis of the information received from the informant and the evidence found in the trash can, Special Agent Ford obtained a warrant to search Mr. Barekman's residence. He executed the warrant on June 4, 2007, and found three to four ounces of marijuana, misdemeanor amounts of LSD, psilocybin mushrooms and cocaine, as well as packaging materials, scales and other drug paraphernalia.

[¶ 7] The State charged Mr. Barekman with two felony counts, possession of marijuana with intent to deliver and possession of marijuana, and three misdemeanor counts for possession of cocaine, psilocybin mushrooms and LSD. Prior to trial, Mr. Barekman filed a motion to suppress the evidence seized from the trash can outside his residence. The district court held a hearing on the motion and, after taking the matter under advisement, issued a decision letter and order denying the motion. Mr. Barekman and the State subsequently reached a plea agreement in which Mr. Barekman agreed to enter a conditional plea of guilty to one count of possession with intent to deliver marijuana and the State agreed to dismiss the remaining counts and recommend a sentence of three to five years in prison. After a sentencing hearing, the district court entered judgment against Mr. Barekman and sentenced him in accordance with the plea agreement with credit for 333 days served.

## STANDARD OF REVIEW

[¶ 8] Our review of alleged error in the denial of a motion to suppress is governed by the following standards:

> Rulings on the admissibility of evidence are within the sound discretion of the trial court. We will not disturb such rulings absent a clear abuse of discretion. An abuse of discretion occurs when it is shown the trial court reasonably could not have concluded as it did. Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the

findings are clearly erroneous. Because the trial court has the opportunity to hear the evidence, assess witness credibility, and draw the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the trial court's determination. Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed de novo. *Negrette v. State*, 2007 WY 88, ¶ 11, 158 P.3d 679, 682 (Wyo.2007).

## DISCUSSION

### 1. Fourth Amendment

■ [¶ 9] Mr. Barekman claims the trash search violated the Fourth Amendment to the United States Constitution. In concluding otherwise and denying the suppression motion, the district court relied on *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). Mr. Barekman asserts that Greenwood is factually distinguishable from this case and does not support the ruling.

[¶ 10] In *Greenwood*, a police investigator received information from an informant that Mr. Greenwood was involved in drug trafficking at his Laguna Beach residence. After conducting surveillance at the residence, observing vehicles stopping briefly during late night and early morning hours and following one of them to another residence that had been investigated for drug trafficking, the investigator asked the trash collector to pick up the trash bags left in front of the Greenwood residence and give them to her. She examined the contents of the bags without obtaining a search warrant and found evidence of drug use. She obtained a warrant to search the residence based upon an affidavit describing the items found in the trash bag. The search resulted in Mr. Greenwood's arrest on felony drug charges.

[¶ 11] After Mr. Greenwood posted bail, another investigator obtained more of his trash bags from the trash collector, examined the contents and found more evidence of drug use. He obtained a search warrant and arrested Mr. Greenwood again on the basis of evidence seized in the search.

[¶ 12] The California superior court dismissed the charges, ruling in accordance with California precedent that the search of Mr. Greenwood's trash bags without a warrant violated the Fourth Amendment and the California Constitution and, without the evidence found in the search, investigators did not have probable cause to obtain a search warrant. The state court of appeals affirmed, the California Supreme Court denied a petition for review and the United States Supreme Court granted *certiorari* and reversed.

[¶ 13] In holding that the search did not violate the Fourth Amendment, the United States Supreme Court said:

> The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable.
>
> . . . .
>
> Here, we conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*Greenwood*, 486 U.S. at 40–41, 108 S.Ct. 1625 (citations and footnotes omitted).

[¶ 14] Mr. Barekman contends that his case is distinguishable from *Greenwood* because the trash law enforcement removed

from outside his residence and later searched was located on private property. The evidence was undisputed that the trailer park in which Mr. Barekman lived was privately owned by an out-of-state resident who contracted with a private individual in Rawlins for trash collection and removal to the city landfill. The contractor provided the barrels in which residents placed their trash and required them to place it in bags before putting it in the collection barrels. Special Agent Ford testified that the barrels were located on the curb approximately 25 to 30 feet from Mr. Barekman's residence. Mr. Barekman contends that these facts, along with a city ordinance prohibiting the separation, collection or removal of trash from the landfill without city permission, gave him a subjective expectation of privacy in his garbage that society would accept as objectively reasonable; therefore, the search violated the Fourth Amendment.

[¶ 15]   The State contends the factual differences Mr. Barekman relies on are insignificant and that Greenwood compels the conclusion that the search in this case did not violate the Fourth Amendment. The State asserts, whether private or not, the street where Mr. Barekman placed his trash was open to the public and he placed the trash there for removal by a third party. The State argues he could not have had an objectively reasonable expectation of privacy under these circumstances.

[¶ 16]   In *Greenwood*, the Court reaffirmed the principle established in earlier cases that what a person knowingly exposes to the public, even in his own home or office, is not protected by the Fourth Amendment. *Id.* at 41, 108 S.Ct. 1625. The Court reiterated that a person has no legitimate expectation of privacy in information that he voluntarily turns over to third parties and society would not accept as reasonable a claim to such an expectation in trash left for collection in an area accessible to the public. *Id.* 41–42, 108 S.Ct. 1625. Applying these principles, we conclude the facts Mr. Barekman relies upon are not sufficient to give rise under the Fourth Amendment to a claim of privacy that society would accept as reasonable. As in *Greenwood,* Mr. Barekman exposed his gar-

bage to the public sufficiently to defeat his claim to Fourth Amendment protection. He placed it at the curb away from his residence, where others could access it, for the express purpose of conveying it to and having it removed by a third party. Having deposited his garbage in an area exposed to the public for the purpose of having a third party take it away, Mr. Barekman could have had no reasonable expectation of privacy in the items he discarded.

[¶ 17]   Mr. Barekman asserts that the fact that the agents removed his trash from a privately-owned trailer court and that he placed it curbside for collection by a specific individual rather than an unknown person gave rise to a reasonable expectation of privacy. In *United States v. Long,* 176 F.3d 1304 (10th Cir.1999), the court considered similar facts and concluded they did not create an expectation of privacy protected by the Fourth Amendment. There, the defendant made special arrangements with a trash collector for removal of his trash from where he left it on top of a trailer parked on his property near the alley. Law enforcement stepped onto the defendant's property, removed the bags, searched them and found evidence of drug activity. The Court held that neither the special arrangement for trash removal nor the fact that police, rather than the trash collector, removed the bags gave rise to an expectation of privacy protected by the Fourth Amendment. Upon placing the bags in a location where they were readily visible and accessible from a public thoroughfare and exposed not just to the trash collector but to anyone, including the police, coming down the alley, the defendant had no expectation of privacy. *Id.* at 1308–1309. Similarly, neither the fact that a specific individual collected Mr. Barekman's trash nor the fact that the agents themselves removed the bags from the barrel gave Mr. Barekman an expectation of privacy. The seizure and search did not violate the Fourth Amendment.

### 2.   *Article 1, § 4 of the Wyoming Constitution*

 [¶ 18]   Mr. Barekman also asserts the seizure and search of his trash bags

violated Article 1, § 4 of the Wyoming Constitution. Relying on cases from other states, he asks this Court to find that the state constitution provides Wyoming citizens greater protection from searches and seizures of trash than the United States Constitution provides. He acknowledges this Court's holding in *Croker v. State*, 477 P.2d 122 (Wyo.1970), that Mr. Croker did not have a reasonable expectation of privacy to the contents of his trash once he placed it in garbage cans for purposes of removal. Mr. Barekman argues, however, that in *Croker* the Court did not conduct the analysis required for deciding the issue under the state constitution.

[¶ 19]  In *Croker*, police officers asked the individuals responsible for collecting trash in Mr. Croker's neighborhood to turn his trash over to them after collecting it from cans located near the alley gate inside his backyard. The officers examined the contents and found marijuana. They then obtained a search warrant on the basis of an affidavit describing the items found in the trash. Mr. Croker claimed that he had a reasonable expectation of privacy in the trash protected by the federal and state constitutions.

[¶ 20]  This Court held that the trash search did not violate the Fourth Amendment or Article 1, § 4. It reasoned that once Mr. Croker put his trash in the cans for purposes of removal "he impliedly consented to entry upon his premises by the garbage collectors in the regular performance of their duties and to the removal of the garbage by them to the alley, which was open to the public. At that time, the officers or anyone else, if the garbage collectors did not object, were free to examine the contents of the collectors' barrel." *Croker*, 477 P.2d at 125.

[¶ 21]  Mr. Barekman is correct that this Court's decision in *Croker* did not independently analyze the state constitutional claim. *Croker* was decided nearly 40 years ago, before this Court began applying the *Gunwall* factors for determining state constitutional claims. *Saldana v. State*, 846 P.2d

604, 622 (Wyo.1993) (Golden, J., concurring). Mr. Barekman asks us to consider his claim in accordance with current Wyoming law. Citing at length from *State v. Hempele*, 120 N.J. 182, 576 A.2d 793 (1990) and *State v. Morris*, 165 Vt. 111, 680 A.2d 90 (1996), he urges this Court to hold that the Wyoming Constitution does not allow law enforcement to rummage through citizens' trash without a warrant.

■  .[¶ 22]  Under the Tenth Amendment to the United States Constitution, the freedom of the state to provide greater expectations of privacy for its citizens than those provided under the federal constitution is guaranteed if, in either its legislative or judicial discretion, it deems it necessary or appropriate to do so. *Saldana*, 846 P.2d at 612. Acknowledging that five of the factors this Court considers in deciding whether the state constitution provides greater protection are of little assistance in determining the scope of Article 1, § 4, Mr. Barekman focuses on the sixth factor: matters of particular state or local concern.[1] He argues it is of great concern to the citizens of Wyoming that the personal items they place in their trash not be subjected to government search without a warrant.

■■■■  [¶ 23]  Under Wyoming law, a person alleging an illegal search must demonstrate a legitimate expectation of privacy in the searched property. *Putnam v. State*, 995 P.2d 632, 636 (Wyo.2000). In order to demonstrate a legitimate expectation of privacy a defendant must show "both an actual subjective expectation of privacy and a reasonable expectation of privacy that society is prepared to recognize." *Id.* The factors we consider in making this determination include: (1) the precautions the defendant took to maintain privacy; (2) the likely intent of the drafters of the Wyoming Constitution; (3) the property rights the defendant possessed in the invaded area; and (4) the legitimacy of the defendant's possession of the property which was searched or seized.

---

1. The factors previously identified by this Court are: 1) the textual language of the Wyoming Constitutional provision; 2) the differences in the texts; 3) constitutional history; 4) preexisting state law; 5) structural differences; and 6) matters of particular state or local concern. *Fertig v. State*, 2006 WY 148, ¶ 15, 146 P.3d 492, 496 (Wyo.2006).

*Dettloff v. State,* 2007 WY 29, ¶ 14, 152 P.3d 376, 381 (Wyo.2007).

[¶ 24]   There is no dispute that the trash contained in the bag the agents seized came from Mr. Barekman's residence.   There also is no dispute that when the agents retrieved the bag it was inside a barrel belonging to someone else who placed it next to the curb on a public thoroughfare for residents of the trailer park to leave their trash.   Mr. Barekman placed the trash in the barrel for it to be taken away and deposited in the city landfill. Other than placing his trash in a bag as the collector required, Mr. Barekman took no precautions to keep his trash private.   Under these circumstances, it is difficult for us to conclude that he had either an actual subjective expectation of privacy or a reasonable expectation of privacy that society is prepared to recognize.   While he certainly had an expectation of privacy in his trash when it was inside his property, out of public view, we are not persuaded that expectation was reasonable once he placed it out on the curb for pickup.   A majority of state courts have reached this conclusion under their own constitutions.[2]

[¶ 25]   Mr. Barekman urges this Court to adopt the minority view that a reasonable expectation of privacy does exist under circumstances like those presented here.   In *Hempele,* after concluding the trash search at issue did not violate the federal constitution, the court considered the question of whether it violated the New Jersey Constitution.   The court applied a different test under the state constitution than the United States Supreme Court applied under the federal constitution in Greenwood.   The New Jersey Court found that "the manifestation of a subjective privacy expectation should not be a separate requirement for protection" under the state constitution; rather, "the New Jersey Constitution requires only that

an expectation of privacy be reasonable." *Hempele,* 576 A.2d at 802.

[¶ 26]   From that starting point, the Court then considered the reasonableness of an expectation of privacy in garbage left curbside for collection:

[W]e start from the premise that "expectations of privacy are established by general social norms."   The "ultimate question" is whether, if garbage searches are "permitted to go unregulated by constitutional restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society." With that question in mind, we first examine whether it is reasonable for a person to *want* to keep the contents of his or her garbage private.

*Id.* (citations omitted).

[¶ 27]   The court considered the variety of private information discoverable from one's trash, such as financial and professional status, political affiliations and inclinations, health and medical conditions, personal relationships, eating habits, reading preferences and private thoughts, and held that "it is reasonable for a person to prefer that his or her garbage remain private."   *Id.* at 803. The court concluded that the New Jersey search and seizure provision, like the Fourth Amendment, "provides protection to the owner of every container that conceals its contents from plain view."   "Because ordinary opaque garbage bags conceal their contents from plain view," the court stated, "the presumption is that an expectation of privacy in the contents is reasonable."   *Id.* at 804.

[¶ 28]   Analogizing trash to mail left for pickup by a mail carrier, the court rejected the State's contention that trash should be excluded from the opaque container rule because it is left in locations vulnerable to

**2.** *Smith v. State,* 510 P.2d 793 (Alaska 1973); *Rikard v. State,* 354 Ark. 345, 123 S.W.3d 114 (2003); *People v. Ayala,* 23 Cal.4th 225, 96 Cal. Rptr.2d 682, 1 P.3d 3 (2000); *People v. Hillman,* 834 P.2d 1271 (Colo.1992); *State v. DeFusco,* 224 Conn. 627, 620 A.2d 746 (1993); *State v. Donato,* 135 Idaho 469, 20 P.3d 5 (2001); *Litchfield v. State,* 824 N.E.2d 356 (Ind.2005); *State v. Henderson,* 435 N.W.2d 394 (Iowa 1988); *State v. Alexander,* 26 Kan.App.2d 192, 981 P.2d 761

(1999); *State v. 1993 Chevrolet Pickup,* 328 Mont. 10, 116 P.3d 800 (2005); *State v. Washington,* 134 N.C.App. 479, 518 S.E.2d 14 (1999); *State v. Schmalz,* 744 N.W.2d 734 (N.D.2008); *State v. Payne,* 104 Ohio App.3d 364, 662 N.E.2d 60 (1995); *State v. Stevens,* 734 N.W.2d 344 (S.D. 2007); *State v. Jackson,* 937 P.2d 545 (Utah App.1997); *State v. Stevens,* 123 Wis.2d 303, 367 N.W.2d 788 (1985).

outsiders' inspection for the specific purpose of being taken by a third party. The court also rejected the State's argument that police should not be required to avert their eyes from evidence left in plain view of the public. "By enclosing their trash in opaque bags," the court stated, "people can maintain the privacy of their garbage even though they may place them in an area accessible to the public." *Id.* at 807. Finally, the court rejected the State's arguments that garbage is not constitutionally protected because it is pervasively regulated or because it is abandoned. The court concluded the existence of ordinances prohibiting scavenging likely increases people's expectation that garbage set out for collection will remain private. Likewise, the court concluded that the abandonment of an item by throwing it away may be an effort to maintain privacy, not to relinquish it. On the basis of this reasoning, the court held: "A person has as much right to privacy in items concealed in a garbage bag as in items concealed in other opaque containers. Defendants had a reasonable expectation of privacy in the contents of their trash bags and can claim the protection of article I, paragraph 7" of the New Jersey Constitution. *Id.* at 810.

[¶ 29] In *Morris*, 680 A.2d at 92–93, the Vermont case upon which Mr. Barekman relies, the court also held the state constitution's search and seizure provision provided greater protection from warrantless trash searches than the federal constitution. "Given the intimate details of people's lives that may be revealed by searching through their refuse, we conclude that persons have a reasonable interest in keeping private the contents of their sealed trash containers" which "is not lost merely because people follow the customary practice of depositing their garbage in closed containers at curbside for collection and disposal." *Id.* at 94–95. In reaching this result, the Vermont court followed much the same analysis as the New Jersey court conducted in *Hempele*.

[¶ 30] *Hempele* and *Morris* are factually indistinguishable from Mr. Barekman's case. In all three cases, an informant told police the defendant was involved in drug trafficking. On the basis of that information, police went to the defendants' residence and seized trash bags placed for pickup in containers outside. Search of the bags revealed evidence of illegal drugs. Based on the informants' statements and the evidence seized from the trash bags, police obtained search warrants. Given these factual similarities, we could join the states that have held trash searches by law enforcement without a warrant violated their state constitutional provisions. *See also, State v. Tanaka,* 67 Haw. 658, 701 P.2d 1274 (1985); *State v. Goss,* 150 N.H. 46, 834 A.2d 316 (2003); *State v. Granville,* 140 N.M. 345, 142 P.3d 933 (App.Ct. 2006); *State v. Boland,* 115 Wash.2d 571, 800 P.2d 1112 (1990).

[¶ 31] However, having fully considered the courts' reasoning for finding greater protection under their state constitutions, we decline to recognize in this instance any increased protection under Article 1, § 4 of the Wyoming Constitution. We conclude instead that once Mr. Barekman placed his trash in the barrel at the curb on the public roadway for someone else to take it away, he evidenced the intent to relinquish any expectation of privacy he had in the contents. Additionally, even assuming it were possible to find a subjective expectation of privacy once Mr. Barekman placed his trash at the curb for removal, we conclude society would be unwilling to recognize that expectation as objectively reasonable. As the Montana Supreme Court stated:

> While garbage bags oftentimes remain intact until their contents are collected by a designated hauler, it is also common to see homeless people, stray pets and wildlife, curious children, and scavengers rummaging through trash set out for collection, in hope of finding food, salvageable scrap, or deserted treasure. The wind and the elements are also factors, particularly in Montana. Routinely, cans are knocked over, bags are exposed to the predations of dogs and raccoons, and garbage is found strewn across streets and alleyways. In short, society's experience with trash left at the alley or curb for collection is anything but consistent with an objective expectation of privacy.

*State v. 1993 Chevrolet Pickup,* 328 Mont. 10, 116 P.3d 800, 804–804 (2005). Mr. Barekman did not have an expectation of privacy in his trash that society would accept as objectively reasonable and the search did not violate Article 1 § 4 of the Wyoming Constitution.[3] *Id.*

[¶ 32] In his final issue, Mr. Barekman asserts Special Agent Ford's affidavit was not sufficient to support issuance of a search warrant absent the evidence seized in violation of the state and federal constitutions. Our holding that the trash search did not violate either constitutional provision makes consideration of this issue unnecessary.

[¶ 33] Affirmed.

---

**3.** In *1993 Chevrolet Pickup,* 116 P.3d at 805, the Montana court imposed two limitations on trash searches. First, the officers must retrieve the trash "in substantially the same manner as the trash collector would take it." *Id.* "In other words, officers cannot openly rummage through a person's garbage at the curb or in the alley, to the embarrassment or indignity of the owner." *Id.* Second, the officers must have an articulable individualized suspicion that a crime is being committed in order to justify the garbage seizure. *Id.* The issue of whether similar limitations should be imposed on trash searches under the Wyoming Constitution was not raised in the present case.