2010 WY 46

**Edgar Eduardo NAVA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–09–0144.**

Supreme Court of Wyoming.

April 20, 2010.

Representing Appellant: Scott Powers of Law Office of Scott Powers, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Anna C. Swain, Student Intern, Prosecution Assistance Program.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Edgar Eduardo Nava (the appellant) appeals from his conviction for felony possession of a controlled substance. The appellant claims that the district court erred in denying his motion to suppress the evidence found in his car during a traffic stop. Specifically, he claims that he was subjected to custodial interrogation without first being given *Miranda* warnings and that his consent to the trooper's questioning and subsequent search of his vehicle was not voluntary. Finding no error, we will affirm the decision of the district court.

## ISSUES

[¶ 2] 1. Whether the appellant should have been given *Miranda* warnings before the trooper asked any further questions after the initial traffic stop?

2. Whether the appellant's consent to further questioning and to the search of his vehicle was given voluntarily?

## FACTS

[¶ 3] On October 23, 2007, the appellant was stopped on Interstate 25 by a Wyoming Highway Patrol Trooper for speeding (81 mph in a 75 mph zone).[1] The trooper approached the appellant's vehicle, advised him of the reason for the stop, and asked for his driver's license, insurance, and registration. As he approached the vehicle, the trooper noted that all of the vehicle's windows were rolled about half-way down and he could smell the overpowering odor of air freshener coming from the vehicle. He was also confronted with a strong odor of cologne and noticed a bottle of cologne located on the center console. As the appellant was searching for the requested information, the trooper observed that the appellant's hands were visibly shaking and he appeared extremely nervous.

[¶ 4] The trooper asked the appellant to accompany him to the trooper's vehicle. Upon exiting his vehicle, the appellant rolled up all of the windows. Inside the patrol car, the appellant remained "considerably nervous," with his legs constantly moving and his hands shaking. This nervous behavior persisted through the entire stop. When asked about the nature of his trip, the appellant responded that he and his girlfriend, who was the passenger in the vehicle, were traveling to St. Louis, Missouri, to visit his

1. No video or audio recording of this traffic stop is available as the recording equipment was in for repair at the time.

family. However, a short time later, the appellant stated that he was going to Kansas City, Missouri. The appellant also told the trooper that he was a firefighter and had finished work for the year because the fire season was over. The trooper asked the appellant if he had been watching the news, noting that about a quarter of California was reportedly on fire at the time. The appellant did not respond to this comment.

[¶ 5] The trooper issued a warning citation, returned the appellant's paperwork and told him he was free to go. The appellant then exited the patrol car and started walking toward his vehicle. At this time, the trooper exited his vehicle and asked the appellant if he could ask some more questions. The trooper told the appellant that he did not have to answer any more questions, but the appellant, without hesitation, said it was "okay" for the trooper to ask more questions. The trooper then told the appellant that he wanted to clarify where exactly he was going. The appellant stated that he was going to St. Louis. The trooper then asked the appellant if he had any marijuana, cocaine, or methamphetamine in his vehicle. The appellant said no, and offered to allow the trooper to search his suitcase. The trooper then asked if the appellant was carrying large amounts of cash, and the appellant responded that he had $1,500 in his pocket for gas money. The trooper then asked for permission to search the vehicle and the appellant told the trooper to go ahead. Upon receiving permission to search, the trooper directed the passenger to exit the vehicle. The trooper opened the suitcase the appellant specifically stated he could search, and underneath the clothes were several bags of high-grade marijuana.

[¶ 6] The appellant was charged with one count of felony possession of a controlled substance, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(iii) (LexisNexis 2009), and one count of possession with intent to deliver marijuana, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (LexisNexis 2009). The appellant filed a motion to suppress evidence, which motion was denied. The parties subsequently entered into a conditional guilty plea agreement. Pursuant to that plea agreement, the appellant entered a guilty plea on November 10, 2008 to Count II of the Information; Count I was dismissed. The district court imposed a sentence of three to five years incarceration, which sentence was suspended and the appellant was placed on supervised probation for a term of four years. The appellant timely appealed from the judgment and sentence.

## STANDARD OF REVIEW

[¶ 7] The standard employed when reviewing a district court's denial of a motion to suppress is well established:

When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's findings on factual issues unless they are clearly erroneous. *Campbell v. State,* 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search and seizure, however, is a question of law that we review *de novo. Id.*

*Garvin v. State,* 2007 WY 190, ¶ 10, 172 P.3d 725, 728 (Wyo.2007) (quoting *Hembree v. State,* 2006 WY 127, ¶ 7, 143 P.3d 905, 907 (Wyo.2006)).

## DISCUSSION

[¶ 8] In this appeal, the appellant claims that the search of his vehicle was illegal inasmuch as it violated his rights under the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution to be secure against unreasonable searches and seizures. Although the appellant mentions both our state and the federal constitutional provisions, and asserts that it "appears" that the Wyoming Constitution provides more protection than its federal counterpart, he fails to provide a "precise, analytically sound approach when advancing an argument to independently interpret the state constitution." *Vasquez v. State,* 990 P.2d 476, 484 (Wyo.1999). Thus,

we find it unnecessary to conduct a separate analysis under Article 1, § 4.[2]

[¶ 9] The appellant makes two arguments as to why the search of his vehicle was illegal. First, he contends that after he was issued a warning citation and told he was free to leave, the trooper's further questioning resulted in custodial interrogation and he should have been "Mirandized" before being subjected thereto.[3] Second, he argues that the search of his vehicle was improper inasmuch as his consent thereto was not voluntary.

[¶ 10] With regard to when a suspect is subject to custodial interrogation, thus requiring *Miranda* warnings before further questioning, we have said the following:

> Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Jelle v. State*, 2005 WY 111, ¶ 14, 119 P.3d 403, 408 (Wyo. 2005). In resolving the custodial status of a suspect we consider "whether a reasonable man in [the suspect's] position would have considered himself to be in police custody." *Gompf v. State*, 2005 WY 112, ¶ 31, 120 P.3d 980, 988 (Wyo.2005). General on-the-scene questioning as to facts surrounding a crime is not "custodial interrogation," nor are statements volunteered freely without compelling influences. *Id.* We consider the totality of the circumstances when determining whether a suspect was in custody when questioned. *Id.* Several factors are relevant to the determination:

>> Among these are: (1) whether a suspect is questioned in familiar or neutral surroundings; (2) the number of police officers present; (3) the degree of physical restraint and whether it is comparable

to those associated with a formal arrest; and (4) the duration and character of the interrogation. *See* 2 Wayne R. LaFave, Jerold H. Israel and Nancy J. King, *Criminal Procedure* § 6.6(c) at 527 (2nd ed.1999); *see also Wunder [v. State]*, 705 P.2d [333,] 335 [ (Wyo.1985) ].

*Jelle,* ¶ 14, 119 P.3d at 408.

*Barnes v. State*, 2008 WY 6, ¶ 14, 174 P.3d 732, 736–37 (Wyo.2008). We have also said that the following considerations may be relevant in some cases:

> The nature of the interrogator, the nature of the suspect, the time and place of the interrogation, the progress of the investigation at the time of the interrogation, whether the suspect is informed that his detention would not be temporary, and the elapsed amount of time between questioning and the arrest may be important factors as well.

*Jelle v. State*, 2005 WY 111, ¶ 14, 119 P.3d 403, 408 (Wyo.2005).

 [¶ 11] The appellant does not analyze whether the trooper's further questioning was custodial in nature using the above-listed factors. Instead, he argues that it "appears that the [appellant] never truly felt that he was free to leave at any time after the issuance of the citation, especially true when the Trooper noted in his probable cause affidavit that he had already made up his mind that the [appellant] was transporting illegal drugs prior to following the [appellant] to the vehicle and requesting to ask additional questions." This argument is inadequate for two reasons. First, as noted above, we evaluate the nature of police interrogation using an objective "reasonable man" standard. *See supra* ¶ 10. Thus, the subjective beliefs or feelings of neither the trooper nor the appellant are relevant to the question

---

**2.** We have previously said in cases such as this, "we do not perceive any difference between the independent protection provided to [the appellant] under the Wyoming Constitution and that provided by the Fourth Amendment." *O'Boyle v. State*, 2005 WY 83, ¶ 45, 117 P.3d 401, 414 (Wyo.2005).

**3.** *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), requires that a person who is being questioned while in custo-

dy first be advised that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." *Bhutto v. State*, 2005 WY 78, ¶ 11, 114 P.3d 1252, 1258 (Wyo.2005) (quoting *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405 (2000)).

of whether particular interrogation was custodial. We have said "[t]he Court has been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers and has held unanimously that '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" *Damato v. State*, 2003 WY 13, ¶ 10, 64 P.3d 700, 705 (Wyo.2003) (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996)); *see also Marinaro v. State*, 2007 WY 123, ¶ 11 n. 3, 163 P.3d 833, 836 n. 3 (Wyo.2007).

[¶ 12] Secondly, our precedent on this issue leads us to conclude that the questioning here, under these circumstances, was not custodial in nature. For example, in *Jelle v. State*, the defendant was suspected of providing lethal mushrooms to another individual resulting in that person's death. 2005 WY 111, ¶ 3, 119 P.3d. at 405. The defendant was observed leaving a residence and then followed and stopped in an alley by a group of police officers in three vehicles. Three of the four officers present questioned the defendant at different times concerning his involvement in providing the lethal mushrooms. *Id.* at ¶¶ 5–10, at 406–07. The questioning lasted approximately thirty minutes. *Id.* at ¶ 11, at 407. Additionally, although the officers stated that they told the defendant he was free to leave and did not have to answer questions, the defendant testified at the suppression hearing that the officers did not tell him he could leave, but instead specifically instructed him that he could not leave until they were done asking their questions. *Id.*

[¶ 13] In concluding that no *Miranda* warning was required because the appellant was not in custody, we made a number of observations concerning the nature of the encounter. *Id.* at ¶¶ 17–18, at 409–10. We noted the following: the encounter occurred in neutral territory, in an area where the appellant had been before and with which he was familiar, the appellant only noticed three officers at the scene, and at no time did the officers use "mass presence" to intimidate the appellant; no team or tandem interrogation took place; the questioning occurred in a public place in broad daylight; the appellant's car was not "blocked in" by the detectives' cars and he was able to drive away at the end of the encounter; the appellant was informed that he was not under arrest and that he did not have to talk to the officers; the detectives were in plain clothes and immediately identified themselves as police officers; the entire encounter lasted less than thirty minutes; there were no threats, raised voices, or weapons drawn; and the appellant was not arrested or restrained. *Id.*

[¶ 14] Comparing the facts and circumstance presented here to those described in *Jelle* leads us to conclude that a reasonable person in the appellant's position would not have considered himself in police custody. When the trooper re-initiated questioning, the appellant had been advised he was free to go and was on his way back to his vehicle, the trooper was the only police officer present, the appellant was in no way restrained, the trooper informed the appellant that he did not have to answer additional questions, and the total time of questioning was relatively brief. Therefore, the trooper was not required to give *Miranda* warnings before further questioning.

[¶ 15] We turn now to the appellant's second issue: whether his consent to the search of his vehicle was valid.[4] Although consent is a well-recognized exception to the warrant requirement, consent must be voluntary in order for it to be effective.

[A] waiver of constitutional rights under our constitution must appear by clear and positive testimony, and, if a search or sei-

---

4. In many Fourth Amendment cases, our analysis includes a discussion of whether the officer had reasonable suspicion of criminal activity justifying expanding the scope of questioning and eventual search of a vehicle. *See Marquez–Guitierrez v. State*, 2007 WY 155, ¶¶ 15–21, 167 P.3d 1232, 1235–37 (Wyo.2007); *Negrette v. State*, 2007 WY 88, ¶¶ 19–22, 158 P.3d 679, 684–85 (Wyo.2007); *O'Boyle*, 2005 WY 83, ¶¶ 23–33, 117 P.3d at 408–11; *Damato*, 2003 WY 13, ¶¶ 13–26, 64 P.3d at 706–10. We find such an undertaking unnecessary here because the appellant does not argue that the trooper lacked reasonable suspicion of criminal activity, because of the limited scope of the questioning by the trooper, and because the appellant consented to the questioning and search. *See Marinaro*, 2007 WY 123, ¶ 12, 163 P.3d at 836.

zure is based upon the proposition that consent was given, there should be no question from the evidence that consent was "really voluntary and with a desire to invite search [or seizure], and not done merely to avoid resistance." Acquiescence and nonresistance have not been deemed sufficient under Wyoming law to establish consent.

*O'Boyle v. State,* 2005 WY 83, ¶ 38, 117 P.3d 401, 412 (Wyo.2005) (citations omitted). When addressing whether consent is voluntary under the Fourth Amendment, we have said:

> In determining whether a warrantless search was justified by a valid consent, we inquire "into the 'voluntariness' of the consent in light of the 'totality of the circumstances' " of the particular case. Some of the factors that a court may consider in determining whether the consent was voluntary include: the way the law enforcement officer phrased the request for permission to search; whether the officer told the individual that he could refuse the request; and the presence of other coercive factors. We must consider all the circumstances surrounding the encounter to determine whether a reasonable person would have felt "free to decline the officers' requests or otherwise terminate the encounter." No single factor is determinative when we are ascertaining whether a seizure occurred.

*Grant v. State,* 2004 WY 45, ¶ 22, 88 P.3d 1016, 1021 (Wyo.2004) (citations omitted).

[¶ 16] In this case, the trooper testified at the suppression hearing that when he asked the appellant if he could ask him more questions, the appellant immediately responded that it was "okay." Also, the trooper testified that when he asked the appellant if he was in possession of any illegal drugs, the appellant responded in the negative and offered to allow the trooper to check his suitcase. Then, when the trooper asked for permission to search, the appellant said "go ahead."

[¶ 17] The appellant does not dispute the officer's testimony in this regard, but instead claims that "no reasonable person would have felt free to leave" under the circumstances and therefore his consent to the search of his vehicle could not have been voluntary. To support this contention, he cites to *O'Boyle v. State,* where we found that a suspect's consent to search his vehicle was not voluntary. 2005 WY 83, ¶ 38, 117 P.3d at 412. However, in *O'Boyle,* the officer asked more than thirty "intrusive" and "repetitive" questions largely unrelated to the traffic stop; there were two troopers and a drug dog on the scene; and O'Boyle was never informed he did not have to answer any of the questions or that he was free to leave. *Id.* at ¶ 63, at 419.

[¶ 18] The State contends that because of the factual difference, *O'Boyle* should not control here, and instead argues that two recent cases are more on-point. In the first case, *Marquez–Guitierrez v. State,* 2007 WY 155, 167 P.3d 1232 (Wyo.2007), after two officers separately questioned the defendant and the driver of the vehicle about the nature of their trip, the driver was issued a warning ticket, his paperwork was returned, and he was told they could be on their way. *Id.* at ¶¶ 6–8, at 1234. As the driver was returning to his vehicle, the trooper stopped him and asked if he could ask a few more questions. *Id.* at ¶ 9, at 1234. The trooper asked if he could search the vehicle and told the driver that a dog would be there soon to "take a quick sniff" and then they would be on their way. *Id.* The driver consented. *Id.* Approximately thirty-three minutes after the vehicle was pulled over, the drug dog arrived and indicated the presence of drugs in the vehicle. *Id.* at ¶ 11, at 1235. On appeal, we rejected the argument that the consent was not voluntary. *Id.* at ¶¶ 23–24, at 1237. To support our decision, we noted that the trooper told the appellant that he was free to go, that the trooper had returned the paperwork, that the trooper was easy-going and non-threatening, and that the driver had testified that he did not feel coerced or intimidated into giving consent. *Id.* at ¶ 24, 1237–38.

[¶ 19] The other case cited by the State is *Marinaro v. State,* 2007 WY 123, 163 P.3d 833 (Wyo.2007). There, the driver was issued a warning ticket, his paperwork was returned, and he was told he could leave and to "have a safe trip." *Id.* at ¶ 4, at 834. The

trooper radioed for assistance and a canine unit then re-approached the driver as he reached his car. *Id.* The trooper asked if he could ask more questions, to which the driver assented, then the trooper asked more questions about the driver's travel plans. *Id.* After a few more questions, the trooper asked if the appellant had any drugs, guns, or cash in his vehicle. *Id.* at ¶ 5, at 834. The trooper asked if he could search the car and the driver consented and began opening the car's doors for the trooper. *Id.* The driver then offered to, and opened the trunk, where two boxes of marijuana were discovered. *Id.* Finding that the consent to the search was consensual, we noted that the driver was told he was free to go; his departure was not stopped by the uniform, gun, or flashing lights; the entire traffic stop was very brief; the trooper's conduct was professional, courteous, and completely non-coercive; and all of the appellant's consents were unhesitant and immediate. *Id.* at ¶¶ 10–11, at 836. Following these findings we stated:

> The "coercive factors" present during this traffic stop are the same "coercive factors" that are present at every traffic stop: an armed and uniformed officer, plus the flashing lights on the patrol car. If these factors were sufficient to invalidate the voluntariness of a consent, no consent would ever be voluntary. Neither can these factors, alone, be seen as proving that the person stopped did not feel that he was free to go. In the present case, for instance, the appellant knew that he was free to go because the trooper had told him he could go.

*Id.* at ¶ 11, at 836.

[¶ 20] Although these cases present slight factual variations from the present case, we find their similarities significant, and the reasoning utilized therein compelling. Thus, after considering all of the facts and circumstances surrounding the further questioning and subsequent search in this case, we find that the appellant voluntarily consented thereto.

## CONCLUSION

[¶ 21] The appellant was not in police custody and therefore not entitled to *Miranda* warnings before further questioning after he received a warning citation and was told he was free to leave. Also, no violation of the appellant's Fourth Amendment right to be free from unreasonable searches and seizures occurred because the appellant voluntarily consented to the further questioning and subsequent search of his vehicle. We affirm the decision of the district court.