2012 WY 23

**The STATE of Wyoming, Petitioner,**

**v.**

**Jason D. HOLOHAN, Respondent.**

**No. S-11-0078.**

Supreme Court of Wyoming.

Feb. 22, 2012.

Representing Petitioner: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Senior Assistant Attorney General. Argument by Mr. Rehurek.

Representing Respondent: John P. LaBuda and Jessica M. Stull of LaBuda Law Office, P.C., Pinedale, Wyoming. Argument by Ms. Stull.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] After initiating a traffic stop, a Wyoming Highway Patrol trooper found marijuana in Jason Holohan's vehicle. Mr. Holohan was charged with two counts of possession of a controlled substance with intent to deliver. He filed a motion to suppress the evidence seized during the search of his vehicle, claiming the trooper lacked probable cause or reasonable suspicion to justify the traffic stop at the time he activated his flashing lights and could not use events occurring after activating his lights to justify the stop. The district court agreed and granted the motion. The State filed a petition for writ of review of the district court's order which this Court granted. We reverse.

## ISSUE

[¶ 2] The State presents the issue for this Court's determination as follows:

> Does the Fourth Amendment require reasonable suspicion for a traffic stop to exist at the moment an officer makes his show of authority (activating his light bar), and may traffic violations occurring after the show of authority be used to establish reasonable suspicion for the stop?

Mr. Holohan restates the issue as follows:

> The District Court correctly ruled that, under the Fourth Amendment to the United States Constitution, reasonable suspicion must exist at the moment a law

enforcement officer makes a "show of authority" that compels a person to some action. Therefore, traffic violations made by a non-fleeing motorist that occur *after* a show of authority cannot be used to retroactively establish the reasonable suspicion required to initiate the traffic stop.

## FACTS

[¶ 3] On July 13, 2010, Trooper Brandon Dyson was on patrol on Interstate 80 in Uinta County, Wyoming. At approximately 7:30 a.m., he was parked in the median parallel to the highway facing west watching oncoming eastbound traffic. His drug sniffing dog was in the seat directly behind him. He observed a vehicle coming toward him at approximately 10 miles per hour under the posted speed limit. He estimated that it was traveling 65 miles per hour in a 75 mile per hour zone.[1] As the vehicle approached his patrol car, Trooper Dyson observed it slow rapidly. He watched the vehicle as it passed his location. He continued to watch and, when the vehicle was approximately 100 yards away, he saw both of its right side tires cross approximately one foot over the fog line and remain over the line for a distance of 100 to 150 feet before crossing back into the lane.

[¶ 4] Trooper Dyson pulled onto the highway and followed the vehicle. According to his affidavit, he saw the vehicle cross over the center line and the fog line. Based upon his observations, he made the decision to initiate a traffic stop. Before activating his flashing lights, however, he moved into the passing lane and pulled up next to the vehicle to get a look at the driver and check whether he was wearing his seat belt. He then pulled back and activated his flashing lights. The vehicle continued eastward for approximately two miles, swerving side to side as it traveled. When the vehicle did not stop, Trooper Dyson turned on his siren. The vehicle then pulled off the highway onto an exit ramp and stopped. Trooper Dyson saw the driver and one of the passengers switch places.

[¶ 5] Trooper Dyson pulled up behind the vehicle, got out of his patrol car and approached the driver's side door. The person in the driver's seat was not the person he had observed driving when he had pulled up parallel to the vehicle on the highway. He requested the occupants' identification, the vehicle registration and proof of insurance. There was no proof of insurance. He asked Mr. Holohan, who had been driving prior to the stop, to come back to the patrol car. Trooper Dyson began filling out citations when another trooper arrived. He asked the trooper to finish the citations while he ran his dog around the vehicle. The dog alerted. The troopers searched the vehicle and found what later tested positive as marijuana. Mr. Holohan was charged with two counts of possession of marijuana with intent to deliver in violation of Wyo. Stat. Ann. §§ 35-7-1031(a) (ii) and 35-7-1014(a) and (d)(xiii) (LexisNexis 2009).

[¶ 6] Mr. Holohan filed a motion to suppress the evidence seized in the search of his vehicle. He argued that Trooper Dyson did not have reasonable suspicion of criminal activity justifying the initial stop of his vehicle. After a hearing, the district court found the evidence did not support Trooper Dyson's testimony that the vehicle crossed the fog or center lines several times before he decided to initiate the traffic stop; therefore, he did not have even a reasonable suspicion justifying using his flashing lights to stop the vehicle. The district court further found the evidence that the vehicle swerved erratically after the unsupported show of authority could not be used against Mr. Holohan.

[¶ 7] The State filed a motion for reconsideration arguing that Mr. Holohan was not seized within the meaning of the Fourth Amendment until he pulled off the highway and stopped his vehicle at which point Trooper Dyson had seen the vehicle swerving side to side and had probable cause justifying the stop. After a hearing, the district court reaffirmed its earlier conclusion that Trooper Dyson did not have probable cause or a reasonable suspicion warranting the use of

1. In his affidavit signed the day of the stop Trooper Dyson stated only that he estimated the vehicle's speed. At the suppression hearing in November of 2010, however, Trooper Dyson testified that he confirmed the vehicle's speed of 65 mph with his radar.

his flashing lights to stop the vehicle and any evidence obtained after that illegal show of authority must be suppressed as fruit of the poisonous tree. The district court entered an order denying the State's motion to reconsider and an order granting Mr. Holohan's motion to suppress. The State filed a motion to stay further proceedings in district court until it had filed a petition for writ of review in this Court and received a ruling on the petition. The district court granted the motion. The State filed its petition in this Court, which we granted.

## STANDARD OF REVIEW

[¶ 8] When reviewing a decision on a motion to suppress evidence we defer to the district court's findings on factual issues unless they are clearly erroneous. *Nava v. State*, 2010 WY 46, ¶ 7, 228 P.3d 1311, 1313 (Wyo.2010). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search and seizure, however, is a question of law that we review *de novo*. *Id.*

## DISCUSSION

[¶ 9] The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. A routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *Tiernan v. State, Dep't of Transp.*, 2011 WY 143, ¶ 11, 262 P.3d 561, 565 (Wyo.2011). The decision to stop a motorist is constitutional when an officer has probable cause to believe he or she has violated a traffic law or has a reasonable suspicion that the motorist is engaged in criminal activity. *Id.*

[¶ 10] The district court in the present case concluded that at the time Trooper Dyson activated his flashing lights he did not have probable cause or a reasonable suspicion of criminal activity to justify stopping the vehicle Mr. Holohan was driving. The district court based its conclusion on its finding that the video and other evidence did not support the trooper's testimony that the vehicle crossed the center or fog lines several times before he activated his lights. We have often said:

> In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions.

*Holman v. State*, 2008 WY 54, ¶ 35, 183 P.3d 368, 377 (Wyo.2008). Viewing the evidence in the light most favorable to the district court's determination, we will not interfere with its finding that the evidence failed to support Trooper Dyson's assertion that he had reasonable suspicion at the time he activated his lights. However, reviewing *de novo* the question of whether the ultimate seizure was constitutional, we conclude that it was.

[¶ 11] In *Terry v. Ohio*, 392 U.S. 1, 19 n. 6, 88 S.Ct. 1868, 1879 n. 6, 20 L.Ed.2d 889 (1968), the Court said:

> [N]ot all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

[¶ 12] Justice Stewart expanded upon this principle in his concurrence in *U.S. v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), stating:

> We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the

privacy and personal security of individuals." *United States v. Martinez–Fuerte,* 428 U.S. 543, 554, 96 S.Ct. 3074, 49 L.Ed.2d 1116 [ (1976) ]. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

[¶ 13] Since *Mendenhall,* Justice Stewart's concurrence has been cited as establishing the following test for determining when a seizure has occurred: "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut,* 486 U.S. 567, 572, 108 S.Ct. 1975, 1978, 100 L.Ed.2d 565 (1988). Applying this test in the context of Mr. Holohan's case, it might appear that he was seized when Trooper Dyson activated his flashing lights because a reasonable person would have believed at that point he was not free to leave. Indeed, as the district court's order states, this Court has considered the activation of flashing lights by law enforcement as a factor in determining whether a seizure has occurred. *McChesney v. State,* 988 P.2d 1071, 1075 (Wyo.1999). However, that factor must be considered "in view of all of the circumstances surrounding the incident." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877. As stated in *Chesternut,* 486 U.S. at 574, 108 S.Ct. at 1980:

> The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the seizure occurs.

Thus, in *California v. Hodari,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Court held that no seizure occurred when, upon a show of authority by law enforcement, the subject did not yield.

[¶ 14] In *Hodari,* two police officers were on patrol in a high-crime area when they saw a group of youths huddled around a car parked at a curb. When the youths saw the officers' car, they ran. This raised the officers' suspicions, and one of them left the car and ran around the block to intercept Hodari who had run into an alley. When Hodari saw the officer, he tossed away what appeared to be a small rock. The officer tackled and handcuffed him. The rock was found to be crack cocaine. In reviewing the trial court's denial of Hodari's motion to suppress the evidence of the cocaine, the court of appeals reversed, holding that Hodari was seized when the officer showed his authority by chasing after him, the seizure was unreasonable and the evidence was fruit of the illegal seizure.

[¶ 15] On certiorari, the United States Supreme Court reversed, holding that even if the officer lacked reasonable suspicion to pursue Hodari, the cocaine was not fruit of a seizure within the meaning of the Fourth Amendment because a seizure requires either the application of physical force with lawful authority or submission to the assertion of authority. Because the officer had not touched Hodari at the time he discarded the cocaine and because Hodari did not submit to the officer's show of authority, the Court held there was no seizure at the time he discarded the cocaine.

[¶ 16] The Court reiterated its holding more recently as follows:

> A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, "by means of physical force or show of authority," terminates or restrains his freedom of movement, *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), *"through means intentionally applied,"* *Brower v. County of Inyo,* 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original). * * * A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise,

there is at most an attempted seizure, so far as the Fourth Amendment is concerned.

*Brendlin v. California,* 551 U.S. 249, 254, 127 S.Ct. 2400, 2405, 168 L.Ed.2d 132 (2007). *See also Wilson v. State,* 874 P.2d 215, 220 (Wyo.1994), in which this Court said "a seizure based on a show of authority does not occur unless the subject yields to the authority."

[¶ 17] In the present case, the district court found that the vehicle continued on for a considerable distance after Trooper Dyson activated his flashing lights. This finding was based on the trooper's testimony that he turned on his siren because the vehicle did not respond to his flashing lights and the vehicle kept going for approximately two miles before stopping. Applying these facts to the law, it must be concluded that the driver of the vehicle did not submit to the trooper's show of authority and there was no Fourth Amendment seizure until the vehicle pulled off the highway and stopped. There having been no seizure until then, the trooper's testimony that he saw the vehicle swerving side to side as it traveled the two miles before stopping and saw the driver and one of the passengers switch seats was not fruit of an illegal seizure and was admissible.

[¶ 18] In concluding otherwise, the district court relied on *McChesney,* 988 P.2d 1071. There, law enforcement received an anonymous REDDI (report every drunk driver immediately) report that a red Mercury with temporary plates was heading eastbound on Interstate 90 weaving between lanes, passing cars, and slowing down in order to pass them again. *Id.* at 1073. A police officer positioned his patrol car to wait for the vehicle and verify the report. *Id.* When the red Mercury with temporary plates passed him, the officer pulled out behind it and followed. *Id.* Although he observed no weaving or other traffic violation, the officer followed the Mercury into a convenience store parking lot, activating his flashing lights as he did so, and parked directly behind the vehicle, blocking it from leaving. *Id.* at 1073, 1075. Under those circumstances, we concluded a reasonable person would have believed he was not free to leave. We went on to conclude that the stop did not comply with the constitutional protections against unreasonable searches and seizures because the seizure that occurred when the officer activated his flashing lights and blocked McChesney's vehicle was not supported by a reasonable suspicion of criminal activity. The only facts the officer pointed to as justifying the seizure were the anonymous uncorroborated REDDI report and his observation that as he followed the vehicle the passengers looked back at him and the driver looked at him in his side mirror.

[¶ 19] The district court in the present case focused on the statements in *McChesney* concerning the officer's use of his flashing lights and concluded that is the point when a seizure occurs. We disagree. McChesney was seized for purposes of the Fourth Amendment because the officer used his flashing lights *and* blocked him from leaving the parking lot. We concluded these circumstances, in combination, constituted a show of authority sufficient to convey to a reasonable person that he was not free to leave.

[¶ 20] The present case differs from *McChesney* in that Trooper Dyson's only show of authority initially was to activate his flashing lights. This case also differs from *McChesney* in that upon the trooper's show of authority, Mr. Holohan did not stop but continued to travel eastward on the interstate for another two miles, weaving erratically as he proceeded. Under these circumstances, Mr. Holohan was not seized upon the trooper's initial show of authority because he did not submit to it. When the vehicle failed to pull over in response to the flashing lights, Trooper Dyson observed it weaving. He turned on his siren and then the vehicle pulled off at the exit. At that point, Trooper Dyson had probable cause to stop the vehicle for weaving erratically and a reasonable suspicion of criminal activity based upon the driver's failure to pull over in response to the flashing lights.

[¶ 21] We reverse the district court's order granting the motion to suppress and remand for further proceedings.