# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 69

**APRIL TERM, A.D. 2016**

**July 11, 2016**

CAMERON CLAYTON JENNINGS,

Appellant
(Defendant),

v.

S-15-0283

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*
> Vaughn H. Neubauer, Neubauer, Pelkey and Goldfinger, LLP, Laramie, Wyoming.

*Representing Appellee:*
> Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Darrell D. Jackson, Director, Bradford H. Coates, Student Director, and David B. Maris, Student Intern, Prosecution Assistance Program, University of Wyoming, College of Law. Argument by Mr. Maris.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Cameron Jennings challenges the district court's denial of his motion to suppress evidence of a controlled substance found in his vehicle after a traffic stop.  He claims that the traffic stop was unjustified and a violation of his constitutional rights.  We will affirm.

## *ISSUE*

[¶2]    Did the district court err when it denied Mr. Jennings' motion to suppress evidence?

## *FACTS*

[¶3]    On the morning of November 5, 2014, the general manager of a motel in Casper, Wyoming, heard a woman outside her room who was "crying and seemed to be hysterical."[1]  The woman turned back toward her room, where a man opened the door and yelled at her.  After the woman went back into the room, the manager "heard screaming and yelling," heard some "loud thuds," and saw "the curtains swishing back and forth in the room."  The manager thought the woman "was in danger," so she called the police.  She related what she had seen and heard to the police dispatcher.  While the manager was still on the telephone with the dispatcher, she saw "the vehicle that was registered to that room, which was a school bus," leave the parking lot.  A man wearing a black hoodie and the woman seen crying earlier were inside the bus.  The manager gave this information to the dispatcher as well.

[¶4]    The dispatcher called for two units to respond to a "family fight" at the motel.  Detective Dunnuck of the Casper police department was in the vicinity, and responded to the call.  As he drove toward the motel, the detective listened to the "radio traffic" and watched the written "call comments" on the computer screen in his patrol car.  He learned that an employee of the motel reported a "male and female arguing within the room," the woman coming out of the room, "crying," then going "back in the room" where they were again "yelling at each other."  He knew that the motel manager reported hearing "loud thuds from [the] room . . . yelling . . . and then they're leaving in [a] yellow Chevy bus with Colorado plates."  He learned where the bus was and got a description of the female.  He spotted the vehicle and initiated a traffic stop.

[¶5]    Detective Dunnuck approached the vehicle on its passenger side and, as soon as the window was opened, the officer smelled "a strong odor of raw marijuana."  After a

---

[1] The facts recited in this section were developed in the hearing on Mr. Jennings' motion to suppress.

1

second officer arrived at the scene, they asked Mr. Jennings to get out of the vehicle. Mr. Jennings refused and resisted but he was eventually removed from the vehicle. The officers handcuffed Mr. Jennings and placed him into a patrol car. After removing the passenger from the bus, the officers conducted a search and found "copious amounts of marijuana" inside. Mr. Jennings was arrested and charged with conspiracy to deliver a controlled substance, unlawful possession of a controlled substance, and obstruction of a peace officer engaged in the lawful performance of official duties.

[¶6] After pleading not guilty to all three charges, Mr. Jennings filed a motion to suppress evidence he contended was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution. After conducting a hearing, the district court denied the motion. The district court determined that

> based upon the totality of the circumstances in the case at hand the stop of [Mr. Jennings'] vehicle was justified when Officer [Dunnuck] showed specific, articulable facts and rational inferences giving rise to a reasonable suspicion that a person has committed or may be committing a crime and therefore, the traffic stop and investigatory detention were reasonable.

It further concluded that, "additionally, based upon the totality of the circumstances in the case at hand the stop of [Mr. Jennings'] vehicle was also justified pursuant to Officer [Dunnuck's] community caretaker function since the search and/or seizure was reasonably related in scope to the circumstances."

[¶7] After the district court's adverse ruling on his motion to suppress evidence, Mr. Jennings entered a conditional guilty plea to all three charges. He reserved the right to appeal the district court's denial of his motion. The district court accepted the pleas and confirmed their conditional nature. The district court later sentenced Mr. Jennings to three to six years of imprisonment on the conspiracy charge, three to six years on the possession charge, and one year on the interference charge, all sentences to run concurrently. It then suspended the imprisonment terms in lieu of three years of supervised probation on each of the first two charges and one year supervised probation on the third charge, with all probation periods to run concurrently. This appeal followed.

## STANDARD OF REVIEW

[¶8] In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the district court's determination and defer to the district court's factual findings unless they are clearly erroneous. *Owens v. State*, 2012 WY 14, ¶ 8, 269 P.3d 1093, 1095 (Wyo. 2012). However, the underlying "issue of law – whether a search was

unreasonable and in violation of constitutional rights – is reviewed *de novo.*" *Lovato v. State*, 2010 WY 38, ¶ 11, 228 P.3d 55, 57 (Wyo. 2010) (quoting *Yoeuth v. State*, 2009 WY 61, ¶ 16, 206 P.3d 1278, 1282 (Wyo. 2009)).

## *DISCUSSION*

[¶9] Mr. Jennings contends that Detective Dunnuck's traffic stop violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.[2] The Fourth Amendment "protects individuals from unreasonable searches and seizures," and a "traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *Garvin v. State*, 2007 WY 190, ¶ 13, 172 P.3d 725, 728 (Wyo. 2007) (citing *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo. 2003)). Warrantless traffic stops are presumptively unreasonable. *Allgier v. State*, 2015 WY 137, ¶ 25, 358 P.3d 1271, 1279 (Wyo. 2015). However,

> [a] stop is justified when an officer can show specific, articulable facts and rational inferences giving rise to a reasonable suspicion that a person has committed or may be committing a crime. *Lovato v. State*, 2012 WY 10, ¶ [9], 269 P.3d 426, 429 (Wyo. 2012). Reasonable suspicion is a lower standard than probable cause and requires a fact-centered inquiry based upon the "totality of the circumstances." *Fender v. State*, 2003 WY 96, ¶ 13, 74 P.3d 1220, 1225 (Wyo. 2003).

*Venegas v. State*, 2012 WY 136, ¶ 9, 287 P.3d 746, 749 (Wyo. 2012). Reasonable suspicion entails some minimal level of objective justification for making a stop – that is, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

[¶10] The question, then, is whether the information available to Detective Dunnuck at the time he made the traffic stop could give rise to reasonable suspicion of criminal activity. As set forth above, Detective Dunnuck was called to respond to a "family fight" at the motel. He learned that an employee of the motel reported a female crying outside her room. As she returned to the room, a man met her at the door. The motel manager

---

[2] He also contends that the traffic stop violated his rights under Article 1, Section 4 of the Wyoming Constitution. He has not presented a separate analysis of his rights under the state constitution. Accordingly, we decline to consider his state constitutional claim.

reported more yelling from inside the room, and then loud thuds. Soon thereafter, the couple left the motel in a yellow bus with Colorado plates.

[¶11] When asked why he decided to stop the yellow bus, Detective Dunnuck explained:

> A.    I wasn't sure to be honest with you. I didn't know if she was kidnapped. I didn't know if there was an ongoing domestic issue. My fear was [if] it's a family violence domestic battery type thing, some of them start to cling to the other. And I was trying to make sure that, you know, we didn't have a worse situation down the road, and that's the reason I stopped this vehicle.
>
> Q.    So you were concerned for her safety?
>
> A.    I was concerned for her safety.
>
> Q.    And why were you concerned for her safety?
>
> A.    Based on the call comments themselves. She initially came out crying, they're yelling at each other, heard thuds. Thuds to me mean things are getting hit, things are throwing, things are breaking, a person is potentially under attack. And then very rapidly after that, they get in the bus and rapidly drive away.

On cross examination, Detective Dunnuck reiterated that he stopped the bus because "[t]hey were in a family fight, I had reason to believe that she was in danger, there was a criminal action going on."

[¶12] The detective's testimony demonstrates that he had specific and articulable facts upon which he made his decision to stop the bus. He explained how those facts gave rise to his suspicion of criminal domestic battery or kidnapping. The detective had more than an inchoate and unparticularized suspicion or hunch, and at least some minimal level of objective justification for stopping Mr. Jennings. *See Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585. Given the totality of the circumstances, we conclude that the detective had a reasonable suspicion of criminal activity, which was sufficient to justify his decision to stop Mr. Jennings.

[¶13] Mr. Jennings asserts that loud arguing, a crying woman, loud thuds, and a hasty departure are not necessarily indications of physical violence. "One could draw an inference that some level of violence was involved in this situation," he admits, "but that inference would not be rational given all of the other innocent explanations." He

4

contends that, "Where reasonable suspicion comes from facts that could give rise to multiple reasonable inferences, the guilty inference should at least be the most likely, or even more likely, conclusion." He does not provide legal authority to support that contention.

[¶14] We have previously recognized that the determination of reasonable suspicion is to be predicated upon the totality of the circumstances.

> The Supreme Court has instructed that we not examine each factor adding up to reasonable suspicion individually, but that we evaluate how convincingly they fit together into a cohesive, convincing picture of illegal conduct. In [*United States v.*] *Arvizu*, [534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)], the Court rejected what is called a "divide-and-conquer analysis," noting that reasonable suspicion may exist even if "each observation" is "susceptible to an innocent explanation." *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744.

*Garvin*, ¶ 16, 172 P.3d at 730 (quoting *United States v. Guerrero*, 472 F.3d 784, 787 (10th Cir. 2007)). Indeed, we have "embrace[d] the doctrine that even conduct which is wholly lawful and seemingly innocent may form the basis for a reasonable suspicion that criminal activity is afoot." *State v. Welch*, 873 P.2d 601, 604 (Wyo. 1994) (citing *Sokolow*, 490 U.S. 1, 109 S.Ct. 1581). Even though there may be lawful and innocent explanations for each individual fact known to Detective Dunnuck, when we consider all of the facts together, we conclude that his suspicion of criminal activity was reasonable and, accordingly, that the district court did not err when it denied Mr. Jennings' motion to suppress evidence.[3]

[¶15] Affirmed.

---

[3] The district court also ruled that the detective was justified in stopping Mr. Jennings pursuant to his community caretaker function. "The community caretaker justification for a warrantless [seizure] recognizes the various duties of a police officer, some of which are 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Owens*, ¶ 12, 269 P.3d at 1096 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973)). Such duties include that of "aid[ing] individuals who are in danger of physical harm." *Owens*, ¶ 12, 269 P.3d at 1097 (quoting 3 Wayne R. LaFave, *Search and Seizure* § 6.6, at 451 (4th ed. 2004)). Detective Dunnuck testified that he was concerned for the safety of the woman who was a passenger in Mr. Jennings' bus. However, because we have already concluded that Detective Dunnuck's decision to stop Mr. Jennings was justified by a reasonable suspicion of criminal activity, we do not need to address whether the search was also justified under the community caretaker exception.