KAUTZ, Justice.
[¶1] Appellant Evan Ernest Kennison entered a conditional guilty plea to one count of possession of marijuana, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i)(A) and (c)(iii)
*148 (Lexis Nexis 2017). Mr. Kennison appeals the district court's order denying his motion to suppress the marijuana Trooper Aaron Kirlin discovered in his possession during a traffic stop on Interstate 80. We affirm.
ISSUE
[¶2] Mr. Kennison raises one issue on appeal which we rephrase as follows:
Did the district court err when it determined Trooper Kirlin's extended contact with Mr. Kennison was a consensual encounter and did not violate the Fourth Amendment to the United States Constitution?
FACTS
[¶3] On the morning of April 13, 2016, Trooper Kirlin was on patrol on Interstate 80 west of Laramie, Wyoming. He received a second-hand text message from another trooper stating Trooper Jason Sills with the Utah Highway Patrol had stopped a black Toyota pickup with a bed cover and multiple stickers covering the back window the evening before. Trooper Sills suspected some sort of criminal activity inside the truck, but a canine unit was not readily available and the driver refused to consent to a search of the truck. Just after 7:00 a.m., Trooper Kirlin observed the truck described by Trooper Sills. Trooper Kirlin began to follow the truck and observed it cross the center and fog lines several times.
[¶4] Trooper Kirlin pulled the truck over and as he approached it he saw both windows were down and the passenger, later identified as Mr. Kennison, was smoking a freshly lit cigarette. Trooper Kirlin informed the driver, Dorinda Wilder, he had pulled her over for multiple lane violations and he would be issuing her a warning. He requested to see Ms. Wilder's driver's license, registration, and proof of insurance, and asked her to accompany him to his patrol car while he ran her information and prepared the warning. While in the patrol car, Trooper Kirlin asked Ms. Wilder if she would be willing to answer some questions and informed her she did not have to answer any questions if she did not want to. Ms. Wilder agreed, and Trooper Kirlin learned Ms. Wilder and Mr. Kennison were returning to their home in Vermont after a short visit with Mr. Kennison's cousin in Sacramento, California.
[¶5] Trooper Kirlin also learned the truck was registered to Mr. Kennison. Ms. Wilder remained in the patrol car while Trooper Kirlin returned to the truck to verify Mr. Kennison's ownership. Trooper Kirlin checked Mr. Kennison's identification and asked him about the couple's travel plans. Trooper Kirlin observed Mr. Kennison was still smoking a cigarette and he appeared very nervous and was trembling.
[¶6] Trooper Kirlin returned to his patrol car and finished issuing the warning. He returned Ms. Wilder's documentation and informed her the traffic stop was complete. He asked her if she felt free to leave, to which she responded she did. He then asked if he could ask her some more questions and, again, told her she did not have to answer any questions if she did not want to. Ms. Wilder stated she would answer his questions. Trooper Kirlin asked her the name of Mr. Kennison's cousin they had visited and information about their travel plans. He also inquired about the couple's employment and when they needed to return to work.
[¶7] Trooper Kirlin asked Ms. Wilder for permission to speak to Mr. Kennison again, and she agreed. Trooper Kirlin returned to the truck and informed Mr. Kennison the traffic stop was complete. Mr. Kennison asked Trooper Kirlin if he was being detained, and Trooper Kirlin informed him he was not. Trooper Kirlin asked Mr. Kennison if he would answer some more questions, and he agreed to do so. He answered questions about his travel plans and why he had decided to drive to California from Vermont instead of flying. During this time, Trooper Kirlin smelled a faint odor of raw marijuana. Trooper Kirlin told Mr. Kennison he smelled marijuana and asked how much marijuana was in the truck. Mr. Kennison handed Trooper Kirlin a marijuana grinder that contained marijuana residue.
[¶8] Trooper Kirlin placed Mr. Kennison in the patrol car and then deployed his canine partner, Frosty, to conduct a free-air sniff around the exterior of the truck. Frosty *149 alerted at the tailgate. Based on Frosty's alert, Trooper Kirlin searched the vehicle and found a small bag of marijuana in a piece of luggage and an additional seven pounds of marijuana in a duffel bag.
[¶9] The State charged Mr. Kennison with one count of possession of marijuana, in violation of § 35-7-1031(c)(i)(A) and (c)(iii), and one count of possession of a controlled substance with the intent to deliver, in violation of § 35-7-1031(a)(ii). Mr. Kennison filed a motion to suppress the marijuana. Although the motion is not entirely clear on the matter, it appears Mr. Kennison argued Trooper Kirlin's actions violated his rights under the United States and Wyoming constitutions. He argued he was unreasonably detained by Trooper Kirlin when he and Ms. Wilder were questioned about where they worked and when they needed to return to work. He further argued that a reasonable person in his situation would not have felt free to leave when he was approached by Trooper Kirlin the final time because Ms. Wilder had remained in the patrol car. After receiving a response from the State and holding a hearing on the matter, the district court concluded Trooper Kirlin's contact with Mr. Kennison did not violate either the United States or Wyoming constitution and denied the motion to suppress. The court determined Trooper Kirlin's initial stop of the vehicle was justified and the information he obtained while issuing Ms. Wilder the warning was reasonably related in scope to the purpose of the stop. The court further determined Trooper Kirlin's contact with Ms. Wilder and Mr. Kennison after the traffic stop ended was a consensual encounter.
[¶10] Thereafter, Mr. Kennison pleaded guilty to possession of marijuana, preserving his right to appeal the district court's decision denying his motion to suppress. In exchange for his guilty plea, the State dismissed the possession of a controlled substance with the intent to deliver charge. The district court sentenced Mr. Kennison to two to five years in prison, but suspended it in favor of three years of probation. Mr. Kennison filed a timely notice of appeal.
STANDARD OF REVIEW
[¶11] When reviewing a district court's decision denying a motion to suppress, we defer to the court's findings of fact unless they are clearly erroneous. Jennings v. State , 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016). We consider the evidence in the light most favorable to the district court's decision because the court had the opportunity to assess the credibility of the witnesses and hear the evidence in the first instance. Owens v. State , 2012 WY 14, ¶ 8, 269 P.3d 1093, 1095 (Wyo. 2012). The underlying legal issue-whether a search or seizure was unreasonable and in violation of the defendant's constitutional rights-is reviewed de novo . Jennings , ¶ 8, 375 P.3d at 790.
DISCUSSION
[¶12] Mr. Kennison contends Trooper Kirlin unlawfully detained him beyond the original purpose of the traffic stop in violation of his Fourth Amendment rights under the United States Constitution.[1] He argues that, even though Trooper Kirlin had completed the traffic stop with Ms. Wilder, Mr. Kennison was not free to leave when re-approached by Trooper Kirlin because Ms. Wilder was still in the patrol car. He claims, therefore, his consent to further contact with Trooper Kirlin was involuntary, and Trooper Kirlin's discovery of the marijuana was unreasonable.
[¶13] The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Jennings , ¶ 9, 375 P.3d at 790. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." Allgier v. State , 2015 WY 137, ¶ 14, 358 P.3d 1271, 1276 (Wyo. 2015) (quoting Heien v. North Carolina , --- U.S. ----, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014) ). Any passengers in the *150 vehicle are also "seized." Brendlin v. California , 551 U.S. 249, 255-59, 127 S.Ct. 2400, 2406-08, 168 L.Ed.2d 132 (2007). To determine whether a traffic stop and resulting seizure was reasonable under the Fourth Amendment, we use the two-part inquiry from Terry v. Ohio , 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) : (1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were reasonably related in scope to the circumstances that justified the interference in the first instance. Hembree v. State , 2006 WY 127, ¶ 12, 143 P.3d 905, 908 (Wyo. 2006).
[¶14] To justify a traffic stop, an officer must have reasonable suspicion a person has committed or may be committing a crime. Venegas v. State , 2012 WY 136, ¶ 9, 287 P.3d 746, 749 (Wyo. 2012). "Reasonable suspicion entails some minimal level of objective justification for making a stop-that is, something more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." Jennings , ¶ 9, 375 P.3d at 791. Further, reasonable suspicion is determined using a fact-based inquiry that considers the "totality of the circumstances." Venegas , ¶ 9, 287 P.3d at 749.
[¶15] If a traffic stop is justified, the resulting detention must last "no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." Hembree , ¶ 13, 143 P.3d at 909 (quoting O'Boyle v. State , 2005 WY 83, ¶ 47, 117 P.3d 401, 414 (Wyo. 2005) ). "In the course of making a routine traffic stop, a law enforcement officer may: request a driver's license and vehicle registration; run a computer check; and issue a citation." Damato v. State , 2003 WY 13, ¶ 13, 64 P.3d 700, 706 (Wyo. 2003) (quoting Burgos-Seberos v. State , 969 P.2d 1131, 1133 (Wyo. 1998) ). A driver must be allowed to continue his journey without delay once the officer determines the driver has a valid license and is entitled to drive the vehicle. Id . However, the detention can be extended beyond the original purpose of the traffic stop with the individual's consent or if the officer has objectively reasonable and articulable suspicion further criminal activity has occurred or is occurring. See id .
[¶16] Mr. Kennison acknowledges Trooper Kirlin did, in fact, observe Ms. Wilder drive the truck over the center and fogs lines, thereby justifying the traffic stop.[2] He argues, however, that Trooper Kirlin extended the detention beyond the time reasonably necessary to issue Ms. Wilder a warning or citation and, therefore, Mr. Kennison was illegally detained when Trooper Kirlin smelled the marijuana in the vehicle. The State claims the contact between Trooper Kirlin and Mr. Kennison after the completed traffic stop was with Mr. Kennison's consent.[3]
[¶17] Consent, whether it be to a search or seizure, must be voluntary to be effective. Nava v. State , 2010 WY 46, ¶ 15, 228 P.3d 1311, 1315 (Wyo. 2010). The evidence presented must leave no question that consent was "really voluntary and with a desire to invite search [or seizure], and not done merely to avoid resistance." O'Boyle , ¶ 38, 117 P.3d at 412. Thus, we must look at the individual's consent under the totality of the circumstances, including the manner in which the law enforcement officer phrased the request, whether the officer told the individual *151 he or she could refuse the request, and whether other coercive factors were present. Grant v. State , 2004 WY 45, ¶ 22, 88 P.3d 1016, 1021 (Wyo. 2004). No single factor is determinative. Id. Instead, we must determine under the totality of all the circumstances whether a reasonable person would have felt free to decline the officer's request or otherwise terminate the encounter. Id .
[¶18] The record is clear Trooper Kirlin's contact with Ms. Wilder and Mr. Kennison extended beyond the conclusion of the traffic stop. However, the record is equally clear that Ms. Wilder consented to further questioning. Trooper Kirlin's testimony and the video of the stop establish that when Trooper Kirlin returned Ms. Wilder's documents, he informed her the traffic stop was complete. He asked her if she felt free to leave, and she stated she did. He then asked if she would be willing to answer more questions, and she agreed. He further informed her she did not have to answer any questions that she did not want to answer. When Trooper Kirlin asked Ms. Wilder if he could speak again with Mr. Kennison, she exhibited no hesitation in granting that request. Trooper Kirlin was professional and courteous during his interaction with Ms. Wilder, and he did not exert any pressure on Ms. Wilder to comply with his requests. See Hembree , ¶ 21, 143 P.3d at 911. A reasonable person in Ms. Wilder's position would have felt free to decline Trooper Kirlin's request and be on her way.
[¶19] Mr. Kennison argues that, despite Ms. Wilder's actions in the patrol car, he was not free to leave because Ms. Wilder remained in the patrol car when Trooper Kirlin re-approached the truck. For this reason, Mr. Kennison argues he was unlawfully detained. Courts have concluded a passenger may be unlawfully detained during a traffic stop despite the driver's consent to prolong the detention. In State v. Cleverly , 305 Kan. 598, 385 P.3d 512 (2016), the Kansas Supreme Court held:
The driver's waiver of his own Fourth Amendment rights by consenting to a voluntary encounter and consensual vehicle search cannot, as a matter of law, be deemed a waiver of the passenger's personal Fourth Amendment rights. If Cleverly's [the passenger] continued presence at the scene of the investigatory detention had transformed into a voluntary encounter, the change must have been based on Cleverly's own individual acts and personal circumstances.
Id . at 607, 385 P.3d 512.
[¶20] In United States v. Guerrero-Espinoza , 462 F.3d 1302 (10th Cir. 2006), the United States Court of Appeals for the Tenth Circuit reviewed a traffic stop where another trooper with the Wyoming Highway Patrol used an investigative technique very similar to the one used by Trooper Kirlin. After stopping a minivan on Interstate 80, the driver accompanied the trooper to the patrol car while he conducted his investigation. Id . at 1305. The trooper returned the driver's license and issued a warning, but told the driver he needed to speak to the passenger, who owned the minivan, about the vehicle's insurance. Id . After speaking with the passenger, the trooper returned to the patrol car and opened the door to allow the driver to exit and return to the minivan. Id. at 1306. Although the trooper did not tell the driver he was free to leave, he considered the traffic stop complete. Id . As the driver began to walk back to the minivan, the trooper inquired if he could ask the driver some more questions. Id . He agreed, and after the trooper asked several questions about travel plans and his relationship with the passenger, the trooper asked if he could speak with the passenger again. Id . The driver agreed. Id . While the trooper spoke with the passenger, the driver remained on the side of the highway at the back of the van. Id . The trooper asked the passenger questions about his travel plans and then asked if there were any guns or illegal drugs in the minivan. Id . He then asked to search the van, and the passenger agreed. Id . The trooper also sought permission to search the van from the driver, and he also agreed. Id . With the assistance of a canine, the trooper discovered several wrapped packages of marijuana and cocaine in a hidden compartment in the gas tank. Id.
[¶21] The court explained that, while the driver may have felt free to leave, there was no evidence a reasonable person in the passenger's position would have felt free to leave. Id . at 1309. Specifically, there was no *152 evidence presented that the passenger knew the trooper had returned the driver's license and issued the warning. Id . As far as the passenger knew, the traffic stop had not ended and he was not free to leave. Id . Therefore, he would not have felt free to decline to answer the trooper's questions and leave the scene, and the trooper unlawfully detained the passenger beyond the time necessary to conduct the traffic stop. Id.
[¶22] Here, there are several key facts that differentiate Mr. Kennison's contact with Trooper Kirlin from that in Guerrero-Espinoza . When Trooper Kirlin returned to the vehicle to speak with Mr. Kennison, he greeted him and then immediately informed him the traffic stop was complete. Mr. Kennison asked if he and Ms. Wilder were being detained, and Trooper Kirlin told him they were not. When Trooper Kirlin asked Mr. Kennison if he would be willing to answer more questions, he also clearly informed Mr. Kennison he did not have to answer any questions if he did not want to. Therefore, unlike in Guererro-Espinoza , Mr. Kennison was aware the traffic stop had ended, he was not being detained, and he did not have to answer Trooper Kirlin's questions.
[¶23] The fact that Ms. Wilder, who was driving the vehicle, stayed in the patrol car is certainly a factor that should be considered in determining whether Mr. Kennison felt free to leave. See Guerrero-Espinoza , 462 F.3d at 1310. However, the totality of all the circumstances demonstrates Mr. Kennison's further contact with Trooper Kirlin was consensual. Just as with Ms. Wilder, Trooper Kirlin was courteous and professional and did not use any coercive tactics to gain Mr. Kennison's consent. The facts show Mr. Kennison knew he was not being detained and, despite being informed he was not required to answer Trooper Kirlin's question, he voluntarily chose to do so. The district court properly determined Trooper Kirlin's contact with Mr. Kennison was consensual and accordingly properly denied Mr. Kennison's motion to suppress.
[¶24] Affirmed.

Mr. Kennison references art. 1, § 4 of the Wyoming Constitution in his argument. However, he has not provided a separate analysis of his rights under the state constitution. Therefore, we limit our analysis to the United States Constitution. Jennings , ¶ 9, 375 P.3d at 790, n.2.

Although Mr. Kennison does not challenge the justification for the stop, he does suggest we should assign some sort of ill motive to Trooper Kirlin's investigation because the traffic stop was "obviously" a pretextual stop based upon the text message received from Trooper Sills. Mr. Kennison does not provide any analysis on how the officer's subjective intent may affect the reasonableness of the traffic stop; therefore, we will not address the issue further. However, we will point out this Court and the United States Supreme Court have both clearly stated a traffic stop that is supported by the requisite reasonable suspicion will not be invalidated simply because the officer had a different primary motivation. Whren v. United States , 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) ; Fertig v. State , 2006 WY 148, ¶ 28, 146 P.3d 492, 501 (Wyo. 2006).

The State argues in the alternative that Trooper Kirlin's continued detention of Ms. Wilder and Mr. Kennison was supported by reasonable suspicion. Because we find the consent issue dispositive, we will not consider whether reasonable suspicion was present.